[L. A. No. 2766. Department Two.—June 27, 1912.]

## CITY OF SANTA ANA (a Municipal Corporation), et al., Respondents, v. SANTA ANA VALLEY IRRIGATION COMPANY, Appellant.

PUBLIC HIGHWAYS—OPEN WATER DITCH ALONG CITY STREET—PUBLIC NUISANCE—EVIDENCE—DEDICATION OF HIGHWAY PRIOR TO CONSTRUCTION OF DITCH.—In an action by a municipality to enjoin as a public nuisance the maintenance of an open water ditch along a street of the city, it is held, upon a review of the evidence, including the deeds and conduct of the owner who made the dedication of the land in question, that the trial court was warranted in finding that prior to and at the time the ditch was constructed the street was and ever since has been a public highway, and that when the ditch was constructed it was constructed on land included in said highway.

ID.—USE OF PORTION OF HIGHWAY DEDICATED—UNUSED PORTION NOT ABANDONED.—After the dedication by the owner of a strip of land for a public highway, the use of only a portion of it for such purposes by the public shows no abandonment of the unused portion. The acceptance by user of a portion of a road dedicated is an acceptance of it in its entirety.

ID.—PARTITION DECREE—EASEMENT FOR WATER DITCH—LOCATION OF DITCH—PRIOR EASEMENT FOR PUBLIC HIGHWAY.—A provision in a partition decree preserving to the several allotees a right of way for a water ditch for irrigation over and upon the allotments lying above them, did not give an allotee the right to enter upon any portion of the lands of the owners of other allotments that he saw fit; and an allotee, or his successors in interest, in constructing the ditch over a strip of land which they knew had theretofore been dedicated and accepted as a highway, made their location subject to the prior easement vested in the public for highway purposes and subordinate to the right of the public to so control the easement for the ditch that it should not interfere with such prior and paramount right, and subject to a reasonable regulation of the use of the easement for ditch purposes by the municipality in which the highway was situated, in the exercise of its police powers for the safety and comfort of the civic community.

ID.—DITCH IN STREET OF MUNICIPALITY—REGULATION BY CITY UNDER POLICE POWER.—The right of a water company to occupy a public street of a municipality with a ditch, is subject to regulation by the municipality, under section 11 of article XI of the constitution empowering it to enforce within its limits "local, police, sanitary, and other regulations."

ID.—PUBLIC NUISANCE—CITY MAY REQUIRE CHANGES IN CONSTRUCTION OF DITCH.—An open water ditch located on a public street in a residential district of a municipality, along that portion of it where a sidewalk would ordinarily be, and raised a foot and a half above the line of the street, is a public nuisance, and the city, under its police power, has authority to require the owner of the ditch, the easement for which is subordinate to the easement for the public street, to change the manner of its construction so as not to endanger the public safety or interfere with the free and unobstructed use of the street.

APPEAL from a judgment of the Superior Court of Orange County and from an order refusing a new trial. Frank F. Oster, Judge presiding.

The facts are stated in the opinion of the court.

E. E. Keech, for Appellant.

W. F. Heathman, and Williams & Rutan, for Respondents.

LORIGAN, J.—The plaintiff city, and the other plaintiffs who are abutting owners on the south side of West Washington Avenue in said city between Ross and Baker streets, a distance of some five blocks, and on East Seventeenth Street, between Bush and French Streets, a distance of two blocks, sued to restrain the defendant from maintaining an open water ditch on the south side of said avenue and street between said side streets; to have the same declared a public nuisance and to require defendant to construct instead of said open water ditch some suitable, reasonable, and proper conduit placed underground along the street in its stead.

A decree to that effect was awarded plaintiffs and defendant appeals therefrom and from the order denying its motion for a new trial. The principal attack made by appellant is upon the findings as they apply to the open water ditch running along West Washington Avenue between the streets mentioned. No attack is made on the findings or judgment as far as they affect the open water ditch of appellant on East Seventeenth Street. It was stipulated on the trial that if the ditch was found to be located on Seventeenth Street it was a nuisance thereon. The court found it was so located,

but only to a very slight extent, and appellant acquiesces in the judgment so far as it affects the ditch on that street.

It may be said, preliminarily, that in 1868 a partition of the Rancho Santiago de Santa Ana, through which the Santa Ana River runs, was decreed and allotments made to the several tenants in common with the right to use the waters of the river on such lands as were irrigable therefrom. By the decree a right of way through the allotments was given for ditch purposes to carry water to such irrigable lands. It was in general terms; no way or course being described or specifically provided for. In 1882 a ditch, a portion of which is involved here, was constructed by the owners of certain allotments for the irrigation of some of their lands and was subsequently turned over to the defendant corporation. In 1886 the plaintiff city of Santa Ana was incorporated and embraced within its corporate boundaries were included some of said allotments and a large portion of the ditch in question, including its length along what is now West Washington Avenue between the streets referred to.

As to West Washington Avenue and the ditch upon it, the court found that during the year 1882, and at the time of the construction of the ditch along the south of the center line of said avenue there was, and ever since had been, and now is, a traveled public road, highway, and street along and on each side of the center line of said avenue, and that a portion of said road, highway, and street extended twenty-five feet south of the center line thereof; that said road, highway, and street ever since the year 1882 and prior to the construction of said ditch have included within it the land over and upon which said ditch is constructed; that said open water ditch is three feet wide at the top and one foot wide at the bottom and two and one-half feet deep; that the maintenance of said ditch as an open water ditch on said West Washington Avenue was and is dangerous to the public and the lives and property of the persons traveling or living on either side of said street, and is an obstruction to the free use in the customary manner of said public street upon which it is situated; that the lands lying south of said avenue have not since the construction of said ditch along the south side of said avenue and are not now used entirely for agricultural purposes; that the larger portion of said lands are now used

for building lots and residence purposes, and the lands lying north have never been irrigated from said ditch, and the owners thereof have no interest in it and said property therein is used for residence purposes; that said defendant can change said open ditch where it is now located to a pipe line and conduct said water therein in order to supply abutting landowners and stockholders with water for irrigation and can make the necessary standpipes therefor without interfering or obstructing said street.

It is insisted by appellant that there was no evidence to sustain the particular finding that when the ditch was located in 1882 what is now known as West Washington Avenue was a traveled public road, highway, and street, and that the ditch of appellant was constructed thereon. The legal proposition relied on by appellant under this claim of the insufficiency of the evidence is that, if when the ditch was dug the land over which it was then constructed was not included within a then public road or highway and only became included as such subsequently, the right to the easement over it for the ditch had become a prior vested property right to which the easement for a public road, highway, or street, was subordinate and that the city in the exercise of its police powers, under which now it attempts to compel a change in its use could not interfere with or impair this vested right; that such vested right could only be affected through condemnation or similar proceedings in which suit aside from other damages to which the appellant might be entitled the expense of making the change from an open to a covered ditch should be awarded it or the expense of doing so should be borne by the municipality.

This question of who shall bear the burden of the change is really the only point in controversy in the case presented under the attack upon the findings. There seems, under the evidence, to be no room for any serious complaint on the part of the appellant against the finding that the maintenance of the ditch on the avenue in its present condition is under the existing and growing conditions of the city in its vicinity a nuisance; nor that the change as decreed from an open to a closed ditch is not entirely practicable. Neither do we understand counsel for appellant to question but that if there existed a public road or highway along what is now

West Washington Avenue in 1882, which then included the land on which its ditch was afterward constructed, that the municipality in the exercise of its police power could not require the change in the use which has been decreed by the court, and that appellant must make the change at its own expense.

· Now as to the finding of a pre-existing easement for highway purposes over the land when the ditch was constructed. While the existence of a public highway over the land when the ditch was constructed along it was made an issue under the pleadings, the evidence produced respecting it was presented exclusively by the respondent city. There can be no manner of question but that in 1887, a year after the incorporation of the city of Santa Ana, what is now known as West Washington Avenue, and upon which the ditch in question was constructed was and ever since has been a public highway or street. The claim of appellant, however, is that when the ditch was constructed in 1882 it had not been established or dedicated as a highway, and that the evidence by which respondent sought to establish it fails to show it. Before considering this claim it may be said that as early as 1875 and up to the time of the construction of the ditch there was an existing highway running to a considerable width over and along the present course of what is now West Washington Avenue. The country was then sparsely settled and the travel was not extensive, but it was generally used as a highway, the beaten track lying on either side of the center line of the present West Washington Avenue, though not actually traveled as far south as along the twenty-five feet from said center line within which the ditch was thereafter located. At the time it was so being used as such highway the title to the land over which it existed was in one Jacob Ross as allotee under the decree of partition of the Santa Ana Rancho made in 1868. In 1871 Jacob Ross conveyed his allotment to one Josiah Ross, who, by sundry deeds made between 1876 and 1881, conveyed to various persons portions thereof, the northern line of the lands conveyed being the center line of said highway, and in such deeds reserving twenty-five feet off of and along the northern boundary of the lands conveyed "for road purposes." These reservations included the land lying twenty-five feet south of the

center line of the public road as it had theretofore for years existed.   Ross also made conveyances of land in this allotment immediately north of the center line of the said existing highway and made similar reservations of twenty-five feet along the north of the center line of said highway for road purposes, disposing of the last portion of the land owned by him abutting on the center line of said avenue in 1892. The plaintiffs in this action other than the city of Santa Ana are the successors in interest of Ross to the fee in the lands south of the center line of said avenue covered by the reservations for road purposes made by him.   Subsequent to said reservations and in 1882 the appellant proceeded to build its ditch.   It was shown in evidence that when the construction of this ditch was commenced Ross protested against it being done, objecting however only to what he claimed was the construction of a canal, saying that in his ''reserves for streets'' he had put reserves in the deeds for ditches (which was an error on his part, because he had not), but that a canal was being constructed and not a ditch, and ordered the parties constructing it to desist.   No attention was paid to his objection, and the ditch was constructed within the reserved twenty-five foot strip south of the center line of the highway, as it was the avowed purpose and intention of the builders to do when they commenced constructing it.   The ditch has remained there ever since.

Under the evidence the claim of appellant is that as the old highway did not cover by actual user the strip of land twenty-five feet from the center line when the ditch was constructed thereover, the only support for the finding that it did must be based on the reservation thereof for road purposes made by Ross in his conveyances, and it is insisted that these reservations did not amount to a dedication of the strip to the public for road, highway, or street purposes; that the reservations by Ross were for his own use and not for the benefit of the public; that the right of the public to an easement over the portion reserved for road purposes did not attach until adverse user of it for such purposes for five years, which was long after the construction of the ditch over the reservations had occurred.   In support of this claim they cite such cases as *Taft* v. *Tarpey,* 125 Cal. 376, [58 Pac. 24], and *Pitcairn* v. *Harkness,* 10 Cal. App. 295, [101 Pac. 809].

But these cases are not in point under the evidence here.   In those cases it is true the question was the extent to which the party making a reservation for road purposes intended it to apply; whether it showed an intention to dedicate the strip described to the public as a highway or to declare a reservation for the benefit of the grantor alone.   The actions were between successors in interest of the former owner who made the reservations and those claiming that the reservations were in effect a dedication for public use as a highway. The language used in making the reservations was similar to that used by Ross in his conveyances.   But there was no evidence in those cases of any intent to devote the use of the land reserved for road purposes except as the language employed disclosed it.   It was held that considering the language alone in which the reservations were expressed they appeared to be made for the benefit of the grantor only, and disclosed no intention to dedicate the land for public use.

But here the trial court had not only before it the language of the reservations themselves, but the circumstances and surroundings under which Ross made them, and his conduct after they were made, which sufficiently warranted it in concluding that Ross intended to and did by these reservations immediately dedicate all the land embraced therein to the use of the public as a highway.

It appears that Ross made many other deeds of portions of the large tract of land he owned besides those in which the reservations along what was then the old highway, but now West Washington Avenue, were made; reservations along the four sides of said particular tracts, from which it is only a fair and reasonable inference that in doing so he intended that these reservations should be used as public roads or streets connecting with each other as they thereafter did.

As far as the reservation of twenty-five feet along both sides of the center line of the present avenue is concerned the use of the term "for road purposes" therein must, as reflecting his intention, be considered in the light of existing conditions when he used it.   It is true that in his reservations he did not refer to an existing highway, nor make his reservations in terms on either side of the center line thereof, but there is no question in the case that the center line of the old highway was the line along which on either side

thereof he reserved a twenty-five foot strip for road pur-
poses. At the time he made his reservation there existed
in fact over his land and was included within its description
an open road or highway. Whether a public easement had at
that time been acquired or not over any portion of the strip
reserved is immaterial. It was certainly then being traveled
as a public highway under a claim of right and without ob-
jection or hindrance from Ross. He knew of this use and
acquiesced in it. If by user the public had acquired an ease-
ment therein the reservation of Ross could not have affected
it and it is not to be assumed that he intended to do so. If
an easement had not been acquired then certainly it could
not be questioned, but that his reservation for ''road pur-
poses'' used in general terms and applying to a strip of land
a part of which was then being and had been for years ac-
tually used by the public for road purposes, would be con-
strued as granting to or confirming in the public the same
right to the use thereof and to the same extent that it was
then being enjoyed,—namely, as a public highway. But it
is said that these circumstances applied to the reservations
would at most only disclose an intention on the part of Ross to
create an easement for highway purposes to the extent that
the highway was then being traveled or used which did not
actually extend to the full width of the strip described in
the reservations and upon which the ditch of the appellant
was constructed. But taking the reservations as disclosing
an intention on the part of Ross to dedicate or confirm to
the public an easement over the strip for at least the then
existing highway which, we are satisfied, they do, there is no
plausible ground for claiming any limitation as to his in-
tention, or that he did not intend the entire width to be de-
voted to the same public highway purposes. The highway
was being traveled, but it had no defined limits as to width.
As is common on ungraded roads in an open country the
travel will at times vary largely on one side or the other from
the general center line, depending on conditions of the road
or the weather. As the owner of the fee in land over which
the highway existed and while intending by his reservations
to dedicate or confirm an easement therein to the public as
such, it was to the interest of Ross to define the limits to
which thereafter it should be used for that purpose, and he

did so.  This intention to devote the entire strip for public use as a highway, is to some extent further disclosed from his language and conduct when the ditch was being constructed over it.  While objecting to what he claimed was digging a canal instead of a ditch he did not declare that the reservations were for his exclusive benefit, or that there was any restrictions upon their use for ordinary highway purposes, but on the contrary designated them as reserves for ''streets.''  This was not the term he used in the reservations; there they are made for ''road purposes.''  But when on the one hand he designates his reserves as for ''road purposes'' and on the other declares that they were made for ''streets,'' a term which as applied to cities or towns or growing communities contiguous thereto means a public thoroughfare, the use of the terms interchangeably fairly indicates that what reservations he did make were not for his own benefit, but as highways for public use.

Upon these considerations and others which might be suggested the trial court was warranted in finding that prior to and at the time the ditch of appellant was constructed the present West Washington Avenue was and ever since has been a public highway and that when the ditch was constructed it was constructed on land included in said highway.  It is hardly necessary to say that after the dedication of the strip for a public highway by Ross the use of only a portion of it for such purposes by the public shows no abandonment of the unused portion.  The acceptance by user of a portion of a road dedicated is an acceptance of it in its entirety.  (*Southern Pacific R. R. Co.* v. *Ferris,* 93 Cal. 263, [18 L. R. A. 510, 28 Pac. 828].)

Aside from the claim that the portion of the strip upon which the ditch is located was not a portion of the public highway when the ditch was constructed, it is further insisted that even if it was it only became so under the reservations by Ross, and his right to create the easement for highway purposes and the easement itself were subject to and subordinate to a prior vested right in the defendant under the partition decree of 1868 to an easement over this strip for ditch purposes.  This claim is based upon the terms of the partition decree which preserved to the several allotees under the partition a right to the use of the waters of the Santa

Ana River on their allotments containing arable and irrigable lands and which provided that "any party . . . holding allotment . . . of land irrigable from the waters of the Santa Ana River shall have the right of way to enter over and upon the allotments lying above them for the purpose of keeping up a convenient zanja (ditch) and running water therein for irrigation." As we have heretofore stated this ditch was constructed by the property owners other than Ross, having lands to the south thereof and on completion turned over to appellant. But this provision in the decree gave neither the allotees nor the defendant their successor in interest to the ditch, any right to enter upon any portion of the lands of the owners of allotments that they saw fit. In constructing the ditch the original constructors might have refused to construct it any where other than within the boundary lines of allotments and could have refused to construct it along a public highway or appellant refused to accept it as so constructed. This was not done. It was constructed over the strip which they knew had theretofore been dedicated and accepted as a highway and having done so they made their location subject to the prior easement vested in the public for highway purposes and subordinate to the right of the public to so control the easement for the ditch that it should not interfere with such prior and paramount right and subject to a reasonable regulation of the use of the easement for ditch purposes by the municipality in the exercise of its police powers for the safety and comfort of the civic community.

It appearing therefore that the avenue had been dedicated to public use as a highway or street when the ditch of the appellant was constructed thereon and the easement acquired thereby was subject and subordinate to the prior right of the public to its use for highway purposes it is quite clear that the judgment, at the instance of the city, regulating its further use was proper and warranted under section 11, of article XI of the constitution of the state which empowers any municipality to enforce within its limits "local, police, sanitary, and other regulations." It is to be noticed that this is not a case where it is claimed on the part of the municipality that the defendant has no right at all to occupy the public street with its ditch. It concedes the right to do

so but only requires that the manner of its use be changed so as not to interfere with the right of the public and the municipality to the free and unobstructed use and control of the street in the customary manner.

When the city of Santa Ana was incorporated in 1886 it included within its municipal boundaries the avenue upon which the ditch was constructed and thereby acquired the right to control its use as a public street to the full extent that the public necessity then or thereafter demanded. At the time of the incorporation and for years thereafter the land on either side of the avenue and in its vicinity being principally farming or orchard property and there being but a limited travel over the avenue there was no necessity for interfering with the ditch as an open one. But within the past few years these lands along the avenue and between the streets heretofore referred to have been laid out into blocks and lots and to a large extent have become populous portions of the city with an increased travel along the avenue. The ditch in question consists of a cement open ditch three feet wide and two and one-half feet deep raised a foot and a half above the line of the street and located along that portion of it where a sidewalk would ordinarily be placed. A ditch of this character located on a public highway in the immediate vicinity of a residential part of the city is, as the court found it to be, a public nuisance and subjects the public traveling along the highway and the property owners and residents in its vicinity to danger and is an interference with the right of the public to a free and unobstructed and entire use of the street for the purposes of travel, as it likewise prevents the municipality in the discharge of its public duty from placing and maintaining the street in its entirety for public use. That the police power of the city of Santa Ana under the facts disclosed is ample to require the defendant to change the manner of the use of one of the public streets of the municipality so as not to endanger the public safety or interfere with the free and unobstructed use thereof cannot be questioned. Nor need authorities in support of it be cited, because we do not understand counsel to claim that if a public easement for the highway or street purposes existed at the time the easement in West Washington Avenue therefor for ditch purposes was imposed the city of Santa

Ana could not under its police power control or regulate the use of such ditch easement. We understand this to be conceded, the only claim being that the easement for the ditch was for the reasons heretofore assigned and discussed superior to the easement for a public highway. But that position we have decided is under the evidence untenable.

It is asserted by appellant that the only easement it acquired through the original and actual location of the ditch in 1882 was a right thereafter to maintain it as an open one only; that it has no legal right to use nor could the court empower or compel it to use a different conduit than such open ditch. But if this position were correct, as the easement of the appellant is subordinate to the easement for highway purposes and the present manner of its maintenance has become a nuisance, if it were impossible for it legally to change its present use it would have to be abolished entirely. But to the advantage of appellant there is no merit in this claim of its counsel because all the owners in fee in the lands impressed with the easements both for highway and ditch purposes are plaintiffs in this action, as well as the city having control of the highway easement, and are all consenting and requiring that appellant make the change.

We are not to be understood in the discussion of this case to intimate or hold that if the highway easement was subsequent or subordinate to the easement for the ditch the municipality would not have the authority in the exercise of its police power to regulate its use, the burden of any expense in a change thereof to be borne by the owners of the ditch easement. We determine nothing on that point as it is not involved because here the easement for the highway is superior to the ditch easement and there can be no question of the power of the city under such circumstances to regulate its use and that any change in the manner thereof must be made at the expense and charge of the owners.

There is nothing further requiring consideration.

The judgment and order appealed from are affirmed.

Melvin, J., and Henshaw, J., concurred.