[Civ. No. 1192.   Third Appellate District.—June 25, 1914.]

## THE PEOPLE, Appellant, v. CHARLES T. LAUGENOUR, Respondent.

DEDICATION OF LAND FOR HIGHWAY—WHAT CONSTITUTES—PLATTING OF LAND AND RECORDING OF MAP.—The survey, platting, marking, and mapping of lands, delineating a strip through them for purposes of a highway, and the filing of the map with the county recorder, constitutes an *offer* of dedication of the roadway delineated on the map as a public highway.

ID.—DEDICATION BY VENDEE—RATIFICATION BY VENDOR.—The fact that the platting and the recording of the map were done by the person who held a contract for the purchase of the lands, instead of by the owners thereof, is not material, if the owners thereafter make conveyances by reference to the map and the highway outlined thereon.

ID.—OFFER AND ACCEPTANCE OF DEDICATION—MANNER OF MANIFESTATION.—The offer of the owner of land to dedicate a highway, and the acceptance of the offer by the public, may be manifested in many different ways.

ID.—CONSUMMATION OF DEDICATION—WHEN ACCOMPLISHED.—If a binding offer to dedicate land for a highway has been made by the owners, and before revocation thereof an acceptance by the public is manifested, either by a formal act of the authorities, or by habitual user by the public a sufficient length of time clearly to show that the way has been thus recognized, used, and accepted as a public highway, the dedication is fully consummated.

ID.—CONSTRUCTIVE DEDICATION—SALE OF LOTS WITH REFERENCE TO MAP.—Where the owner of land has platted it, laid out streets or roadways, and has sold the land by reference to such plat, or where he has a map or plat made, and, selling the smaller subdivisions, has described them as bounded by a road laid out through the larger tract, a constructive dedication arises.

ID.—COMMON-LAW DEDICATION—ESTOPPEL AGAINST OWNER.—Independently of statute, the use of a street by the public for a reasonable length of time, where the intention of the owner to dedicate is

clearly shown, is sufficient, without any specific action by the municipal authorities, either by resolution or by repairs or improvements. A common-law dedication operates against the dedicator by estoppel, and this estoppel may be invoked by or on behalf of the public at large as well as by the municipal authorities of the city.

ID.—IMPLIED OR CONSTRUCTIVE DEDICATION—FACTS AND CIRCUMSTANCES SHOWING.—Where the owners of a tract of land caused it to be surveyed and subdivided into smaller tracts with a roadway running through the larger tract upon which the smaller subdivisions abut, recorded the map, made sales of many of such smaller tracts according to the plat, and the purchasers thereafter, for at least twenty years, continuously use the roadway without objection, a dedication is thereby established, notwithstanding no express acceptance was attempted by the county authorities until about eighteen years after the recordation of the map, and the county never worked the road or otherwise recognized it as a public highway, and at the time of the filing of the map both ends of the roadway were inclosed, and a portion of the roadway was cultivated and used for pasturage by purchasers of the tracts.

ID.—WIDTH OF HIGHWAY—WHETHER TRAVELED WAY IS CONCLUSIVE THEREOF.—Where there is a finding or indisputable evidence that a roadway dedicated to the use of the public is, as so dedicated, of a certain width, the fact that the main travel has customarily been confined to narrower limits than the width of the road as marked out and dedicated is not conclusive of the width of the road.

APPEAL from a judgment of the Superior Court of Yolo County. N. A. Hawkins, Judge.

The facts are stated in the opinion of the court.

A. G. Bailey, for Appellant.

Arthur C. Huston, for Respondent.

HART, J.—This is an action instituted in the name and on behalf of the people of the state of California by the district attorney of Yolo County against the defendant for the purpose of securing a decree: That a certain strip of land situated in said county and specifically described in the complaint be declared a public highway; that certain obstructions alleged to have been placed and to be maintained on said land be abated or removed, "and that the defendant be enjoined from further maintaining said obstructions, or any of them upon, over, across or along said highway, and for costs of suits."

The strip of land in dispute is described as being a roadway sixty feet wide, running west from the Knight's Landing and Woodland Road, across Coward's subdivision of the Marston Tract, and bounded on the north by lots 12, 13, 14, 15, 16, and 17 and on the south by lots 5, 6, 7, 8, 9, 10, and 11 of said Coward's subdivision of the Marston Tract, according to the map or plat thereof on file and of record in the office of the county recorder of said county of Yolo. It is alleged in the complaint that said strip of land "is now, and for more than 24 years last past has been, a public highway, dedicated and abandoned to the public, and accepted and used by the public during all of said time as a public highway"; that the same "is a public highway, duly and legally accepted as a public highway by the board of supervisors of the county of Yolo," etc. The complaint then charges that the defendant, on or about the sixteenth day of May, 1912, and prior to the filing of the complaint herein, "plowed up said highway, and erected, constructed, built and maintained a levee and other embankments, excavations, cuts and ditches over and across said highway, and that said defendant tore up the roadway and the roadbed of the said highway and left said roadbed in great lumps and clods"; that said highway is still being maintained by the defendant in the condition as thus described and that thereby the right of the public to travel over and along said highway in the usual and customary manner is interfered with.

The answer denies that the land described in the complaint was ever a public highway, dedicated or abandoned to the public, or accepted or used by the public at any time for that purpose; denies that said land was ever dedicated for the purpose of a public highway or duly or legally accepted for such purposes by the board of supervisors of the county of Yolo; admits that the defendant did, at about the time mentioned in the complaint, make certain excavations in and erect certain embankments on said land and that he is still maintaining thereon said embankments, etc., but avers that the defendant had a legal right to do said work "and to do or perform any act done or performed by him on said lands and premises, and referred to in said complaint." Further answering said complaint, the defendant "alleges that the said lands and premises do not constitute a public highway, and the said plaintiff herein has no interest whatever in said right-

of-way, and the public has no interest therein, and the same does not constitute a highway.''

The findings of the court coincide with the denials and admissions of the answer, and the defendant was, accordingly, awarded judgment, from which this appeal, supported by a transcript of the testimony, is prosecuted by the plaintiff, said appeal having been taken under the new or alternative method prescribed by sections 953a, 953b, and 953c of the Code of Civil Procedure.

The undisputed facts are: That, on the twelfth day of November, 1886, W. W. Brownell and J. D. Laugenour, having previously purchased from one H. F. Marston a certain tract of land, situate in Yolo County, entered into the following agreement respecting said land with one W. M. Coward: ''The parties of the first part (Brownell and Laugenour) bind themselves to deed said land above referred to, in tracts or parcels as the same shall be sold by the party of the second part (Coward), and to make good and sufficient deeds to the purchasers, provided that no expense for conveyancing shall accrue to the parties of the first part. The party of the second part agrees not to sell any of said land at less than one hundred dollars per acre, without the consent of said parties of the first part, and to apply the entire proceeds of each sale at the time such sales may be made to the payment of a certain promissory note of even date herewith given by said second party to parties of the first part for the sum of thirteen thousand dollars, with ten per cent interest, and due on or before two years from date. As soon as complete payment shall have been made of the principal and interest of said described note, the parties of the first part agree to convey all of said land that may remain unsold to the said party of the second part, or to his heirs or assigns, free from all encumbrances. This agreement is for the security of the said sum of money and it is intended as a bond for a deed to the party of the second part, but the obligations of the parties of the first part under this agreement to the party of the second part shall cease at the expiration of two years from the date hereof or at the date of the expiration of the above described note . . .

''And it is further agreed by and between the said parties that all rents, issues and profits arising from the said above described premises shall accrue to the said W. M. Coward, the

party of the second part, for the term of two years from the date of this agreement.''

The foregoing agreement, duly signed and acknowledged by the parties thereto, was recorded in the office of the county recorder of Yolo County, on the fifteenth day of December, 1886.

Subsequently to the filing for record of the said agreement, Coward caused the tract of land described therein to be surveyed, and subdivided the same into smaller tracts. This survey called for and located a roadway across said entire tract, sixty feet in width, and running east and west, and connecting on the east with the county road running in a northerly and southerly direction from the town of Knight's Landing to the city of Woodland. A map or plat of said subdivision, including the roadway in question, as so surveyed and laid out, was, at the instigation and under the supervision of said Coward, made and completed by the surveyor on the twenty-eighth day of January, 1887, and said Coward caused the same to be filed for recordation with the county recorder of Yolo County on the tenth day of June, 1887, and it was on that day duly recorded by that officer. The roadway so laid out and delineated on said map was fenced off. The smaller tracts or subdivisions were then placed upon the market for sale and all that were sold, of which there were many, were conveyed by reference and according to the said map or plat.

Among the lots of said subdivision conveyed by J. D. Laugenour and W. W. Brownell, under their agreement with said Coward, was one to F. M. Price. The deed to Price reserved ''to the grantors one acre in the S. W. corner of the tract described, to be laid out as nearly square as may be, *and a right of way over the tract sold to the tract reserved.*''

On June 11, 1887, said Laugenour and Brownell, in pursuance of their contract with Coward, conveyed to Messrs. Allison & Treat portions of the Coward subdivision and which embraced 172.69 acres. The deed to Allison & Treat contained, as in effect do all the deeds conveying portions of said subdivision, the following provisions: '' . . . , also a *roadway over the route heretofore reserved in the deed to F. M. Price,* and the right to use the acre reserved in said deed in common with all purchasers of portions of said Marston tract and right of way for irrigating ditches as designated on the plat of said subdivision.''

On August 9, 1889, Allison & Treat conveyed the land described in said deed to one George Poinsett, the said deed containing the same language concerning a roadway, etc., as that above quoted, and, on May 31, 1893, Poinsett conveyed the same land or tract to the defendant in this action, C. T. Laugenour, the deed to the latter following the language relative to the roadway, etc., contained in the two previous deeds referred to.

On the seventh day of March, 1905, the board of supervisors of Yolo County adopted a resolution purporting to be and intended as a formal acceptance of the avenue or roadway in controversy as a public highway. It will thus be noted that there elapsed between the date of the recordation of the map of the subdivision and the date of the purported acceptance by the board of supervisors of the roadway as a public highway a period of almost eighteen years.

The undisputed evidence shows that the avenue in question was, at all times and continuously after the sale of lots in the subdivision through which it passes, used by the purchasers of said lots and their successors in interest and such other persons as had business or other relations with those residing in said subdivision. The evidence further shows that the county never did any work on said roadway or otherwise recognized it as a public highway until about and after the time of the adoption by its board of supervisors of the resolution purporting to accept said roadway as a public highway, and above referred to.

It appears that, some time prior to the year of 1893, a fence had been erected along the entire north boundary line of the roadway. It also appears to be an undisputed fact that the defendant or his predecessors in interest planted a row of olive trees in the road some six or eight feet south of the fence just mentioned. Others owning lots abutting upon the roadway also cultivated portions of the same in one form or another. There remained at all times, however, an open and unobstructed track in the roadway of about twenty or twenty-five feet in width, and it was this track or way over which the people traveled back and forth through the Marston or Coward subdivision. The people owning property in said subdivision occasionally, or whenever it was necessary to facilitate the convenient use of the road, worked on and improved

the roadway. It was shown that some of the owners of property in the Diggs subdivision had on various occasions worked on and graded the road.

The evidence shows that for quite a period of time a fence was maintained across the west end of the avenue or roadway, or at a point where what was known as the "Diggs subdivision" adjoins the Coward subdivision. This fence had been removed prior to the time at which the defendant became the owner of his tract of land in the latter subdivision. At the east end of the roadway, where it intersects with the county road running between Woodland and Knight's Landing, a gate or a "panel" had always been maintained. This gate was generally kept open until the defendant came to the subdivision, after which he aimed and endeavored to keep it closed. A controversy arose between the owners of property in the subdivision and the defendant over the matter of the closing of the gate, the defendant insisting that the gate should be kept closed and the other owners of land in the subdivision claiming that to keep the gate closed would be in violation of their rights. This controversy led to the proceedings by the board of supervisors whereby the county attempted formally to indicate its acceptance of the roadway as a public highway.

It is admitted that the road was constantly used for a period of about twenty years before the institution of this action, not only by the residents of the Marston or Coward subdivision but also by those residing on the Diggs subdivision, which, as seen, joins the former subdivision on the west. The defendant himself testified that the road was and had been for many years used by the residents of the Coward subdivision and by other people having business with or occasion to visit the residents of said subdivision.

The foregoing embraces a statement in substance of all the important evidence produced at the trial, and, as before stated, it is admitted that the facts thereby established are true.

The defendant contends that, while he has never denied, nor does he now deny, that the road in question constitutes a private way for the use of the owners of the lands situated in the Coward subdivision, said roadway is not a public highway. Indeed, in his testimony, the defendant goes so far as to de-

clare that ownership of the land constituting the roadway was in him, but that he did not ''deny the people the privilege of passing over it.''

In support of his position, the defendant emphasizes the following propositions of fact developed by the evidence: That the county never worked the road and never made any attempt to accept it as a highway until about eighteen years after the map of the Coward subdivision was recorded; that, at the time of the filing of said map, both ends of the roadway were inclosed, either with a fence or a panel; that at all times the east end was closed with either a panel or a gate; that, since said ''strip of land does not touch a county road on the west, the same was not thrown open to the public'' at any time from the date of the filing of the map to the present time; that the avenue has been used for pasture purposes, and that ''it has never been traveled except by persons residing on the subdivision and those who had business with them.''

It cannot be doubted that the survey, platting, marking, and mapping of the lands concerned here and the filing of said map with the county recorder constituted an offer of dedication of the roadway delineated on said map as a public highway. (*People* v. *Reed,* 81 Cal. 70, [15 Am. St. Rep. 22, 22 Pac. 474]; *Forsyth* v. *Dunnigan,* 94 Cal. 438, 441, [29 Pac. 770]; *Prescott* v. *Edwards,* 117 Cal. 298, [59 Am. St. Rep. 186, 49 Pac. 178]; *City of Los Angeles* v. *Kysor,* 125 Cal. 463, [58 Pac. 90]; *Davidow* v. *Griswold,* 23 Cal. App. 188, [137 Pac. 619].)

The point first urged by the defendant that the acts of Coward in platting, mapping, and recording the map cannot be held to be an offer of dedication for the reason that he was not the owner of the land and, therefore, had no right or authority to make the offer, is without force, inasmuch as it is undisputed that the tract was subdivided and the road in question laid out by Coward under his agreement with Laugenour and Brownell and by the authority of the latter, and since, furthermore, Laugenour and Brownell acquiesced in and ratified the act of platting the tract as delineated on the map by making their deeds of conveyance by reference to said map and the road in question as outlined thereon.

The single question remaining is: Does the evidence disclose that there was an acceptance of said offer of dedication of said road by the public?

It is very doubtful whether the purported formal acceptance of the offer of dedication of said road as a public highway by the board of supervisors under the circumstances as above indicated may be held to be a legal acceptance. This question need not, however, be decided here. "The offer of the owner to dedicate may be manifested in a hundred different ways, *and the acceptance of the offer by the public may be manifested in a like number of ways.*" (*City of Los Angeles* v. *Kysor,* 125 Cal. 463, [58 Pac. 90].) If a binding offer to dedicate has been made by the owner and before revocation of such offer by any act or acts of the donor an acceptance of the offer by the public is manifested either by a formal act of the public authorities or by habitual user by the public a sufficient length of time clearly to show that it was thus recognized, used, and accepted by the public as a public highway, then the dedication is fully consummated. And it has been held that where the owner of land has platted the same and laid out streets or roadways and has sold the land by reference to said plat, or where he has a map or plat made and, in selling the smaller subdivisions, has described them as bounded by a road laid out through the larger tract, a constructive dedication arises. It is true that some of the cases hold that the acts last referred to do not in strictness constitute a dedication, but that their effect is to work an estoppel, *in pais,* precluding the donor or owner of the lands through which the way passes, and all claiming under him, from asserting any ownership inconsistent with the use of the way as such. (Elliott on Roads and Streets, 3rd ed., p. 147; *Brown* v. *Manning,* 6 Ohio, 298, [27 Am. Dec. 255]; *M. E. Church* v. *Mayor etc. of Hoboken,* 33 N. J. L. 13, [97 Am. Dec. 697]; *Oregon City* v. *Oregon Street Railroad,* 44 Or. 446, [74 Pac. 926]; *Davidow* v. *Griswold,* 23 Cal. App. 188, [137 Pac. 619].) But whether the acts mentioned amount strictly to a dedication or merely work an estoppel *in pais,* precluding the owner from claiming rights in or over the street or roadway inconsistent with their use by the public as a public way is immaterial, for, as is said in *Davidow* v. *Griswold,* the result is the same.

In *Smith* v. *San Luis Obispo,* 95 Cal. 463, [30 Pac. 591], it is said: "Independently of the statute, however, we think the use of the street by the public for a reasonable length of time, where the intention of the owner to dedicate is clearly

shown, is sufficient, without any specific action by the munici-
pal authorities, either by resolution or by repairs or im-
provements. A common-law dedication operates against the
dedicator by estoppel, and this estoppel may be invoked by
or on behalf of the public at large as well as by the municipal
authorities of the city; for a street is a highway for the use
and benefit of the public at large, though under the immediate
care of the municipality.''

In *Archer* v. *Salinas City*, 93 Cal. 43, [16 L. R. A. 145, 28
Pac. 839], it is said: ''Dedication is an ultimate fact, de-
pendent upon the establishment of other facts, and is to be
found from the evidence presented to the court. (*Harding*
v. *Jasper*, 14 Cal. 648.)  It results from the acts of the owner
of the land, coupled with the intent with which he does
those acts. It may be express, and completed by a single act,
as when the land is dedicated by deed, or it may be implied
from a series of acts, as when the owner subdivides a tract
of land into blocks and streets, and causes a map of such
subdivision to be recorded, and sells the several subdivisions
which front upon those streets. Whenever the dedication is
complete, the property thereby becomes public property, and
the owner loses all control over it or right to its use. Even
though the acceptance presumed from an express dedication
may not impose upon the public all the obligations that an
express acceptance would impose, yet the owner is as much
concluded by his dedication in the one case as in the other.
If the dedication is complete by his act, whether express or
implied, it is thereafter irrevocable by him, and the effect
of such dedication cannot be qualified by any act or declara-
tion thereafter made on his part. The property dedicated
has become public property, impressed with the use for
which it was dedicated, and neither can the public divert it
from that use, nor can it be lost by adverse possession. Nor
is the effect of such dedication impaired by any delay in the
use of the land for which it was set apart. Such failure to
make use of the land does not authorize the owner to resume
possession. The public can thereafter appropriate the land
to the use for which it was dedicated whenever convenience
or necessity may suggest.''

After quoting the foregoing excerpt from the Archer case,
this court, in *Davidow* v. *Griswold*, 23 Cal. App. 188, [137
Pac. 619], adds: ''A very large number of cases from other

jurisdictions holding similarly is cited by respondents but we may forego specific consideration of them. In some, it is assigned as a sufficient reason for saying that the dedication is complete that the purchasers represent the public, that the latter is not a distinct class from the former, that the purchasers are as much a part of the public as those who use the streets for the purpose of travel and that they have equal authority to accept a dedication of the streets for the public.''

We can see no escape from the conclusion that the facts of the present case bring it clearly within the rule enunciated in the foregoing cases.

It is true that the question of dedication ''is an ultimate fact, dependent upon the establishment of other facts, and is to be found from the evidence presented to the court.'' (*Harding* v. *Jasper,* 14 Cal. 648; *Archer* v. *Salinas City,* 93 Cal. 43, [16 L. R. A. 145, 28 Pac. 839].) In this case, however, as we have shown, the facts are undisputed. The filing of the map with the county recorder constituted a clear and unquestionable manifestation by the owners of the subdivision of an intention to dedicate the roadway in question to the use and benefit of the public. The evidence undoubtedly shows, and, indeed, it is admitted, that the public continuously used the road from the time that it was laid out and the map was filed. To recapitulate briefly the evidence, we find this situation presented in this case: That the owners of a tract of land had the same surveyed and subdivided into smaller tracts, with a roadway running through the larger tract and upon which the smaller subdivisions abutted; that, as so subdivided and marked out, the land was platted and mapped and the owners caused the map to be filed as a public record; that they sold many of the smaller subdivisions according to the plat as indicated by said map, the road in question being delineated thereon; that for at least twenty years said roadway has been customarily and continuously used by the purchasers of the smaller tracts and by any part of the public having occasion to use or travel over the same, no objection, until the defendant objected, ever having been made against the use of the road by the public.

The fence across the west end of the Coward subdivision was there when the tract was subdivided, platted, and mapped, as was likewise the gate at the east end. These circumstances

cannot, therefore, be regarded as evidence of an intention in the owners of the tract to revoke the offer of dedication.

Nor, under the circumstances of this case, can the fact that certain parts of the roadway as delineated and described on the map filed with the public recorder were cultivated and planted to trees and cereals or vegetables or used as pasture be accorded any significance as proof of the revocation of the dedication. The roadway as laid out was sixty feet in width and it was so outlined on the map. The uncontradicted evidence shows that it was the purchasers of lots in the subdivision and not the original owners or dedicators who cultivated portions of the roadway, and there is no claim by any who so cultivated said roadway, except the defendant, that they did so as a matter of right or with any intention of indicating a revocation of the dedication. Where there is a finding or, as here, indisputable evidence that a roadway dedicated to the use of the public is, as so dedicated, of a certain width, the fact, if it be a fact, that the main travel has customarily been confined to narrower limits than the width of the road as marked out and dedicated is not conclusive of the width of the road. (*Southern Pacific Co.* v. *City of Pomona,* 144 Cal. 339, [77 Pac. 929].) And in this case, as stated, the circumstances under which portions of the roadway were so used do not constitute the slightest evidence of an intention to revoke the dedication or to limit the width of the road to the track which has been customarily traveled.

It seems to us that it would be difficult to conceive how a much stronger case of constructive dedication than the present could well be developed. As is said in *Davidow* v. *Griswold,* 23 Cal. App. 188, [137 Pac. 619], so it is true here: "The owner has voluntarily placed himself in a position where equity will not permit him to deny thereafter that the said streets and parks are as represented by him; and, independent of the statement that they have been dedicated to public use, the other acts of the owner, considered in connection with the purchases under conditions mentioned, would preclude the said owner from contending, at least as far as said purchasers are concerned, that they are not streets and parks. *And if they are to be considered as really streets when we regard the rights of the purchasers, it is difficult to*

*understand how their status would be changed when we regard the rights of the public generally."*

Our conclusion is that the uncontroverted evidence and admitted facts beyond doubt show that there was in this case a fully completed dedication, that the findings are not justified, and that the judgment is, consequently, erroneous.

The answer admits that the defendant has excavated and otherwise obstructed the highway in question, and it follows from the conclusion at which we have arrived that he has done so without any legal authority.

The judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 24, 1914.