[Civ. No. 3272.   Third Appellate District.—May 26, 1927.]

## S. M. RICHARDSON, Respondent, v. T. O'HANRAHAN et al., Appellants.

[1] DEDICATION—STREETS—MAPS.—To constitute an offer to dedicate land for a street, it is not essential that a plat should be made by the owner; it being sufficient that he recognizes and approves a plat made by another, making sales with reference thereto.

[2] DEEDS—REFERENCE TO OFFICIAL MAP—EVIDENCE.—The use of the word "official," in deeds referring to an official town map, filed after the execution of the deeds, may be treated as surplusage, and the map referred to may be identified by parol evidence.

[3] DEDICATION—OBSTRUCTION OF STREET—INJUNCTION—EVIDENCE.—In an action to enjoin the obstruction of a street and for damages, the evidence was sufficient to warrant the inference that the grantors of town lots referred to the only map in their possession or shown to be in existence by use of the term "official map" in their deeds, and that the corporation, through which defendants deraigned title to the obstructed part of the street, recognized, approved, and dedicated to public use the streets delineated on such map.

[4] ID.—OFFER TO DEDICATE STREETS—ACCEPTANCE—MAPS.—A direction by the county supervisors to place a town map in the county road book, their designation of streets delineated thereon as county roads, and the expenditure of public funds in the improvement of a part thereof, together with their use by the public, constituted

---

1.  See 9 Cal. Jur. 33; 8 R. C. L. 894.
2.  See 9 Cal. Jur. 305.
4.  See 9 Cal. Jur. 60.

sufficient acceptance of a land owner's offer to dedicate the streets to public use, it not being necessary that the whole area of the street be improved or used to make the acceptance complete.

[5] INJUNCTION—OBSTRUCTION OF STREET—REMEDIES.—A lot owner, whose access to the street was shut off by an obstruction therein, is entitled to sue for an injunction, her damage differing in kind as well as in degree from that sustained by others.

[6] ID.—REMOVAL OF OBSTRUCTION—OWNERSHIP TO CENTER LINE OF STREET.—A lot owner is entitled to sue for an injunction for the removal of, and damages caused by, an obstruction extending from her property line to the center of the street, the presumption being that she owned to the center of the street under sections 831 and 1112 of the Civil Code.

[7] EASEMENTS—DEEDS—STREETS—REFERENCE TO MAPS—RECORDS.— A deed of lots by reference to a map gives the grantee a private easement in the adjoining streets delineated thereon, although the map was not filed for record until after the execution of the deed.

[8] ID.—OBSTRUCTION OF ADJOINING STREETS—REMEDIES—INJUNCTION. The widow of a grantee of lots by deed referring to a map is entitled to sue for an injunction for the removal of, and damages caused by, an obstruction of the adjoining street delineated on such map, as the owner of a private easement.

---

(1) 18 C. J., p. 60, n. 25.    (2) 22 C. J., p. 1273, n. 82.    (3) 18 C. J., p. 100, n. 99.    (4) 18 C. J., p. 78, n. 35, p. 82, n. 91.    (5) 44 C. J., p. 967, n. 55.    (6) 44 C. J., p. 945, n. 48.    (7) 19 C. J., p. 928, n. 61.    (8) 19 C. J., p. 999, n. 34.

APPEAL from a judgment of the Superior Court of Nevada County. George L. Jones, Judge. Affirmed.

The facts are stated in the opinion of the court.

Prewett & Chamberlain, C. F. McGlashan and Theodore W. Chester for Appellants.

5. Right of private individual to abate obstruction in street preventing or interfering with access to property, notes, 52 Am. Rep. 574; 11 Ann. Cas. 287. See, also, 13 Cal. Jur. 390; 13 R. C. L. 231.
6. Description with reference to highway as carrying title to center or side of highway, notes, 2 A. L. R. 6; 47 A. L. R. 1276. See, also, 4 Cal. Jur. 379; 4 R. C. L. 78.
7. Implied easements in streets when grant refers to map, note, 122 Am. St. Rep. 217. See, also, 9 Cal. Jur. 965; 9 R. C. L. 767.

Cooke & Stoddard and Nilon & Nilon for Respondent.

FINCH, P. J.—Judgment was entered herein enjoining the defendants from obstructing High Street in front of the plaintiff's residence near the westerly end of block G in the town of Truckee and for damages in the sum of one hundred dollars. The defendants have appealed from the judgment.

As stated in appellants' opening brief, "there is little or no dispute as to the material facts." The defendants claim ownership of the part of High Street in question under a quitclaim deed from Paul M. Doyle, whose claim of title was based on a quitclaim deed from the Pacific Improvement Company. Plaintiff's residence is upon lots 1, 2, and 3, being the first three lots at the westerly end of block G. These lots were conveyed to plaintiff's husband, now deceased, and to whose title the plaintiff has succeeded, by a deed executed by Charles Crocker April 6, 1883, in which deed the property is described as follows: "All that real property situated in the town of Truckee . . . known and described on the official map of said town as lots numbers one, two and three in block G." No map of the town of Truckee was filed in the office of the county recorder until July 15, 1890, and no other map thereof was filed thereafter until June 3, 1901. The court found that the map filed July 15, 1890, "is the official, and only official, map of said town of Truckee and of that section of the town of Truckee embracing the premises in controversy; that for many years prior and down to July 15, 1890," and since that time, "all, or practically all, of the deeds conveying lots in said section of the town of Truckee referred to said map, and described the lot or lots sold by and with reference to said map; . . . that the actual width of said High street at all times has been, and now is the same as delineated and shown upon said official map filed July 15, 1890; . . . that . . . prior to July 15, 1890, a public street then designated and at all times since known as High street, was duly and regularly laid out, dedicated as a public street, and abandoned to the public as such, by the owner of the land affected thereby; . . . that about twenty years ago, the people of the town of Truckee, assisted by the board of

83 Cal. App.—27

supervisors of said county of Nevada, at substantial expense, caused to be set apart and constructed along the line of intersection of said High street with the easterly line of Spring street a side path about five feet wide; that on account of the steep grade of said side path, a series of ten granite steps were cut and laid in one of the steepest portions of said path for the permanent use of plaintiff and other residents of that section of the town of Truckee, and that about the same time plaintiff and her husband, now deceased, at their own expense, caused an iron railing to be affixed to said granite steps for the convenience and security of pedestrians using the same.''

Relative to the acts of which the plaintiff complains, the court found: ''That on or about May, 1921, defendant T. O'Hanrahan wrongfully and unlawfully, and for the purpose of vexing, annoying and preventing plaintiff from reaching her said premises on High street by her usual and accustomed pathway of travel, entered upon said High street and upon that portion thereof fronted by plaintiff's said dwelling-house and in close contact with the front line of plaintiff's said premises, and upon and within the exterior boundaries of plaintiff's said lots from her said property line to the center of said High street, and did wrongfully and unlawfully make thereon an excavation about five feet deep on the northerly side of said street and in contact with plaintiff's said property line, and said excavation being about fifty feet long easterly and westerly, and about twenty feet wide, and on the southerly and lower side of said excavation did wrongfully throw up excavated material consisting of rocks, boulders and earth, making a fill from eight to ten feet high, . . . and tore out and destroyed a portion of said side path and removed and carried away eight of said steps, so that plaintiff and other pedestrians have been compelled to abandon the use thereof; . . . that by reason of the acts of said defendants, . . . plaintiff's view of a portion of the business section of the town of Truckee, which she had previously enjoyed, has been greatly obscured and cut off, the rental value of her said property has been largely diminished, she has lost tenants for said property, and she has suffered inconvenience in being deprived of the use of said side path and steps, all to her damage in the sum of one hundred dollars; . . . that said High street

between Spring and Bridge streets . . . was traveled and used by the public generally for a long time prior to July 15, 1890, as well as all the times since said date, with the knowledge of, and without objection of owners of the land affected thereby.''

From the map referred to, which was introduced in evidence by the plaintiff, it appears that block G is 875 feet in length and is bounded on the south by High Street and on the east and west ends thereof by Bridge and Spring Streets respectively. That part of High Street lying south of block G is about 160 feet wide at the east line of Spring Street and 42 feet in width at the west line of Bridge Street. A traveled roadway, referred to in the testimony of the county surveyor as being of ''the width of . . . the wheel tracks,'' runs along the northerly side of High Street, between Bridge and Spring Streets, cutting into the southerly ends of some of the lots in block G and being entirely on plaintiff's lots, near the north line of High Street, at the west end of the block. A roadway of similar character extends from the intersection of the east line of Spring Street and the south line of High Street to about the center of the south line of block G, there connecting with the roadway first mentioned. Both of these roadways have been used by the general public at all times since the year 1872. The triangle bounded by these two roads and the east line of Spring Street is the land claimed by the defendants. It lies on a steep hillside over which vehicles are unable to travel in its present condition, the roadway in front of plaintiff's dwelling being about 80 feet higher in elevation than a point opposite thereof in the south line of High Street.

April 18, 1870, a patent was issued by the United States to Central Pacific Railroad Company for the section of land in which the town of Truckee is located. June 9, 1870, that company conveyed the land to Charles Crocker. August 14, 1871, Crocker conveyed it to the Contract and Finance Company, which company reconveyed it to Crocker October 26, 1875. October 6, 1888, the land was conveyed to the Pacific Improvement Company by Leland Stanford, Collis P. Huntington, Mary F. S. Searles (formerly Mary F. S. Hopkins), the executors of the last will of Charles Crocker, deceased, and others. The deed recited that ''title to the property . . . was vested in Charles Crocker, who held the same for

the benefit of himself, Leland Stanford, Collis P. Huntington, and Mary F. S. Hopkins in equal shares of one fourth each; . . . for the sole purpose of facilitating conveyances and leases''; that Stanford, Huntington, and Mary F. S. Searles each owned one-fourth of the capital stock of the Pacific Improvement Company and that the surviving wife and children of Charles Crocker, deceased, owned the other one-fourth thereof. The map hereinbefore referred to is indorsed, "Filed at request of C. P. R. R. Co. July 15, 1890 at 10 min. past 11 o'clock a. m. A. B. Brady, Recorder." April 8, 1892, the supervisors of Nevada County adopted a resolution ordering that "the county surveyor place the map of the streets of Truckee now on file in the Recorder's Office in the Road Book of the County." The map was so placed, with the following indorsement: "Townsite of Truckee, Surveyed by the C. P. R. R. Co. Filed by request of the Hon. Board of Supervisors on Friday April 8, 1892." The minutes of the board of supervisors of January 10, 1893, contain the following: "On motion and by order of the board the roads in the several Townships of the County are hereby designated as follows: . . . Meadow Lake: Division No. 1. Streets in Town of Truckee." May 10, 1902, the Pacific Improvement Company executed and delivered a quitclaim deed to Paul M. Doyle purporting to convey to him "all of the land bounded on the north by High street; on the east by Bridge St. extended, on the south by lots on the north side of Main street east and on the west by Spring street." Main Street is the next street south of and parallel with High Street. March 30, 1920, Doyle executed a quitclaim deed to defendant Lillian E. O'Hanrahan, purporting to convey to her the triangular parcel of land in question here. The defendants contend that the roadway along the south side of block G and a strip of land alleged to be 42 feet wide through which such roadway runs constitute the whole of High Street, while the plaintiff claims that High Street includes all the territory shown on the map as such.

Appellants contend that they are entitled to a reversal of the judgment on four grounds as follows: 1. That the filing of the map on July 15, 1890, at the request of the Central Pacific Railroad Company, did not constitute an offer to dedicate the streets shown thereon to .public use,

because that company then had no interest in the property; 2. That "it was not permissible to show by parol that a certain map in San Francisco was the one referred to in the various deeds as the 'official map' of Truckee"; 3. That "if any offer of dedication was ever made it was not accepted"; 4. That the findings "show an obstruction in a public street which is a public and not a private nuisance and a private individual cannot abate it."

[1] To constitute an offer to dedicate land for a street, "it is not essential that the plat should have been made by the owner of the land; it is sufficient that he recognizes and approves a plat made by another making sales with reference thereto." (18 C. J. 60; *Logan* v. *Rose,* 88 Cal. 263, 267 [26 Pac. 106]; *People* v. *Laugenour,* 25 Cal. App. 44, 51 [142 Pac. 888].) In *Harding* v. *Jasper,* 14 Cal. 643, 648, it is said: "In dedication no particular formality is necessary; . . . it may be made either with or without writing, by any act of the owner; . . . the dedication being proved in most, if not all, of the cases, by matter *in pais,* and not by deed. The vital principle of the dedication is the intention to dedicate. . . . If accepted and used by the public in the manner intended, the dedication is complete. . . . Dedication, therefore, is a conclusion of fact, to be drawn by the jury from the circumstances of each particular case." "The offer of the owner to dedicate may be manifested in a hundred different ways; and the acceptance of the offer by the public may be manifested in a like number of ways." (*City of Los Angeles* v. *Kysor,* 125 Cal. 463, 466 [58 Pac. 90, 91]; *Venice* v. *Short Line Beach Land Co.,* 180 Cal. 447, 450 [181 Pac. 658]; *County of Inyo* v. *Given,* 183 Cal. 415, 418 [191 Pac. 688]; *People* v. *Laugenour, supra; Mulch* v. *Nagle,* 51 Cal. App. 559, 566 [197 Pac. 421]; *Ferguson* v. *Oildale Mut. Water-Co.,* 78 Cal. App. 74 [248 Pac. 256].)

[2] Between 1868 and October 6, 1888, Crocker executed numerous conveyances of town lots in the town of Truckee. During the succeeding twelve years the Pacific Improvement Company made many conveyances of lots therein. These deeds refer to "the official map" of the town in describing the property conveyed thereby. Such use of the word "official" may be treated as surplusage in the deeds executed prior to the filing of the map and the map referred to in the deeds may be identified by parol evidence. (9 Cal. Jur.

305; Devlin on Deeds, 3d ed., secs. 1016–1018; *Leonard* v. *Osburn*, 169 Cal. 157 [146 Pac. 530, 532].)

[3] Lewis Tasheira, a witness for the plaintiff, testified that he was employed by the Pacific Improvement Company from 1893 to 1915; that during that time he had access to the records of the company; that in the course of his employment he "had occasion to examine and refer to the maps and plats" in the possession of the company; that one of such maps was the same as the one here in question. On cross-examination he testified as follows: "Q. Do you know when that map came into the possession of the Pacific Improvement Company? A. No, I couldn't say. I think that was made during his (Crocker's) administration. Q. That is, the original map? A. Yes. . . . Q. You think this map, referring to exhibit A in the deposition, correctly shows the courses and distances and the metes and bounds of what it purports to represent as they were set forth on the map which was on file in the office of the Pacific Improvement Company? A. I think so, without a doubt. Q. During the time of your employement in the office from 1893 until 1915, did you see any other map than the original of which this purports to be a copy? A. I never saw any other map." There is no evidence tending to show that either Crocker or the Pacific Improvement Company ever had possession of any map of the town of Truckee other than the map of which the one filed July 15, 1890, is a copy. It is not to be presumed that the term "official map," appearing for so many years in conveyances of town lots, was undesignedly used. While the evidence is not as satisfactory as might be desired, it is a fair inference therefrom, in the absence of contradictory evidence, that, by the use of the term "official map," the grantors referred to the only map in their possession or shown to be in existence. This inference is strengthened by the fact that, after the map was filed in the office of the county recorder, and after the supervisors had ordered it placed in the road book of the county and had designated the streets of the town as county roads, the Pacific Improvement Company, in its deeds, continued to refer to "the official map" of the town. These facts, together with the other facts enumerated, warrant the inference that the company recognized and

approved the map and dedicated to public use the streets delineated thereon.

[4]    The direction to place the map in the road book of the county, the designation of the streets as county roads and the expenditure of public funds in the improvement of a part thereof, together with the use thereof by the public, certainly constituted a sufficient acceptance of the offer of dedication. It was not necessary that the whole area of the street should have been improved or used to make the acceptance complete. (*Santa Ana* v. *Santa Ana Valley Irr. Co.,* 163 Cal. 211, 219 [124 Pac. 847].)

[5]    The damage suffered by plaintiff from the obstruction in the street differed in kind as well as in degree from that sustained by others, particularly in that her access to the street was shut off. (*Cushing-Wetmore Co.* v. *Gray,* 152 Cal. 118, 121 [125 Am. St. Rep. 47, 92 Pac. 70]; *Gardner* v. *Stroever,* 89 Cal. 26, 29 [26 Pac. 618]. See, also, *Fisher* v. *Zumwalt,* 128 Cal. 493 [61 Pac. 82]; *Johnson* v. *V. D. Reduction Co.,* 175 Cal. 63 [L. R. A. 1917E, 1007, 164 Pac. 1119].) [6]    Further, it is presumed that plaintiff owns to the center of the street. (Civ. Code, secs. 831 and 1112.) The court found that the obstruction of which complaint is made was "upon and within the exterior boundaries of plaintiff's said lots from her said property line to the center of said street." It appears, therefore, that the obstruction was upon land owned by the plaintiff, subject only to the use thereof as a public street.

[7]    Regardless of any question of dedication to public use, the sale of the lots to the plaintiff's husband, under the circumstances stated, gave the grantee a private easement in the adjoining streets delineated on the map referred to in the deed, notwithstanding the fact that the map was not filed for record until after the execution of the deed. (*Eltinge* v. *Santos,* 171 Cal. 278, 283 [Ann. Cas. 1917A, 1143 152 Pac. 915].)    [8]    Plaintiff's action could have been maintained and judgment given in her favor on the basis of such easement.

The judgment is affirmed.

Plummer, J., and Thompson, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 25, 1927, and a petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 25, 1927.