[No. 14628.   Department One. — August 3, 1892.]

LEVI SMITH, RESPONDENT, v. THE CITY OF SAN LUIS OBISPO, APPELLANT.

DEDICATION OF HIGHWAY — MANIFESTATION OF INTENT. — To constitute a dedication of land to public use as a highway, no particular formality of either word or act is required. It may be made either with or without writing, by any act of the owner, such as throwing open his land to public travel, or platting it and selling lots bounded by streets designated in the plat, thereby indicating a clear intention to dedicate, or an acquiescence in the use of his land for a highway, or his declared assent to such use. The vital principle of the dedication is the intention to dedicate, and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made.

ID. — BUILDING FENCES — PUBLIC USE — DECLARATIONS OF INTENTION. — The act of a land-owner in building a fence on each side of a strip of land, leaving it open at each end to the access of the public, the strip having been used for fifteen years prior thereto without objection, and traveled over by a large number of persons, the act of building such fence being both preceded and followed by expressed statements of the land-owner showing his intention to dedicate the land as a public street, shows such a dedication.

ID. — PAYMENT OF TAXES — REBUTTAL OF INTENTION. — Where the intention of a land-owner to dedicate part of the land for street purposes has been shown by specific acts, and it does not appear but that the entire tract, including the street, has been assessed as a whole, the payment of the tax thereon by the owner cannot be held to rebut his intention of dedication so shown by his specific acts.

ID. — ASSESSMENT OF TAXES — ESTOPPEL OF PUBLIC. — The general public are not estopped from claiming that land has been dedicated as a public street by the act or omission of the city assessor in assessing the land to the dedicator and his successors in interest.

ID. — PUBLIC USE WITHOUT ACTION OF MUNICIPAL AUTHORITIES. — The use of land as a street by the public, for a reasonable length of time, where the intention of the owner to dedicate is clearly shown, is sufficient to perfect the dedication, without any specific action by the municipal authorities, either by resolution or by repairs or improvements.

ID. — COMMON-LAW DEDICATION — ESTOPPEL OF DEDICATOR — RIGHTS OF PUBLIC. — A common-law dedication operates against the dedicator by estoppel, and this estoppel may be invoked by or on behalf of the public at large as well as by the municipal authorities of a city.

ID. — EVIDENCE OF DEDICATION. — The evidence in this case reviewed and held to show an act of dedication of land to public use for street purposes.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.

The facts are stated in the opinion.

*William Shipsey,* for Appellant.

*Wilcoxon & Bouldin,* for Respondent.

HAYNES, C.—Ejectment to recover a parcel of land in the city of San Luis Obispo, alleging an ouster on November 13, 1890. The answer denied all the allegations of the complaint except that defendant was a municipal corporation, and alleged that the demanded premises " is, and for many years last past has been, a public street of said city, to the possession of which the defendant is entitled for street purposes."

The plaintiff had judgment, and defendant appeals upon the judgment roll.

The demanded premises is a strip of land about 45 feet wide and 175 feet long, and which would be wholly occupied or covered by Beach Street, in the city of San Luis Obispo, if that street were extended from a point claimed by plaintiff to be its present northwesterly terminus to Marsh Street.

A diagram, made part of the findings, but which it is not necessary to reproduce in this opinion, shows the course of Marsh Street to be northeasterly and southwesterly. Pacific Street is easterly from and parallel to Marsh Street. Nipomo Street crosses both Marsh Street and Pacific Street nearly at right angles, and Beach Street is about five hundred feet southerly from and parallel to Nipomo Street. The land in controversy extends from Marsh Street easterly about half-way to Pacific Street, to the point claimed by the plaintiff to be the westerly terminus of Beach Street, from which point Beach Street extends easterly across and beyond Pacific Street.

The court found that in October, 1871, the United States conveyed by patent to the trustees of the town of San Luis Obispo a tract of land which included the demanded premises, and in November of the same year said trustees conveyed to one Higuera a portion of said patented tract, including the part in controversy. In January, 1884, Higuera conveyed to one St. Clair. In

March, 1884, St. Clair conveyed to Forbes, and in March, 1888, Forbes conveyed to the plaintiff.

The court further found that Beach Street, extending from the land in controversy easterly, has been a public street since the year 1870, but that from 1870 until some time in 1888, there was an obstruction on that part of Beach Street adjoining the land in controversy, consisting of a corral maintained by one Martinez; that for eight years last past the land in controversy has been fenced on both sides on the lines of Beach Street if produced to Marsh Street, but was not fenced on the line of Marsh Street, but has always been open until after Forbes conveyed to plaintiff in 1888, when plaintiff built a fence on the line of Marsh Street across Beach Street if produced, which fence was maintained by plaintiff until removed by defendant on November 13, 1890. During all the times above mentioned the land remained in the condition above described, having no other structure or improvement thereon; that for fifteen years prior to the building of said fence by the plaintiff on the line of Marsh Street, the land in controversy was traveled over by a large number of persons when the bars in said corral were down, and when not down were passed by persons on foot who desired to pass; that in June, 1875, Higuera, who had purchased a part of said patented tract on each side of and including the premises in controversy, sold and conveyed to one Pellerie a lot fronting on Marsh Street, which adjoined the land in controversy, and at the time of the sale Higuera informed the purchaser that the lot he was selling to him was a corner lot, and that the street on the easterly side of the lot was Beach Street. Nine years after selling that lot to Pellerie, viz., in 1884, and before he conveyed to St. Clair, Higuera said to one Pinho that he had intended the land in controversy for a street, but as the town authorities had not worked it, or done anything about it, he considered he had a right to sell it, and intended to sell it.

The court further found that these premises had never

been platted as a street nor marked as such upon any map, public or private; that from 1871 to the present time, except two years when it was not assessed, it was assessed to Higuera and his successors in interest, and the taxes thereon were paid by them.

Upon the foregoing facts, the trial court concluded that there had never been a dedication by the plaintiff or his predecessors in interest of this property to public use as a street, and that the defendant had not in any manner accepted any dedication thereof as a street; and the questions now to be determined are, whether these findings are sustained by the record.

Dedication of land to a public use is simply setting it apart or devoting it to that use. To constitute a dedication at common law no particular formality of either word or act is required. " It may be made either with or without writing, by any act of the owner, such as throwing open his land to public travel, or platting it and selling lots bounded by streets designated in the plat, thereby indicating a clear intention to dedicate; or an acquiescence in the use of his land for a highway, or his declared assent to such use will be sufficient; the dedication being proved in most if not all of the cases by matter *in pais*, and not by deed. The vital principle of the dedication is the intention to dedicate; and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made." (*Harding* v. *Jasper*, 14 Cal. 648.) This case has not only been cited and approved by this court down to the present time, but accords with the best considered cases in many other states.

We think the probative facts found by the court clearly show an act of dedication of the land in controversy by Higuera to public use for street purposes, both preceded and followed by expressed statements showing his intention so to dedicate it. The act to which we especially refer was that of building a fence on each side of this strip of land on the side lines of Beach Street produced to Marsh Street, while leaving it open at each end, thus

giving free access to it from either direction.   These fences were built eight years before the trial of the case, viz., in 1883.   For fifteen years prior to that time, this parcel of land was traveled over by a large number of persons when the bars of the corral were down.   This use of the land by the public does not appear to have been objected to at any time.   If it had been without his consent, we may reasonably suppose that instead of marking out specifically the lines of the street he would have built an obstruction across it; but thus building the fences while it was being used as a street seems to be as clear and explicit a dedication to the public for street purposes as could well have been made.   Much the larger number of cases of this character in cities and towns base the evidence of dedication upon plats showing streets, and the reference thereto in sales and conveyances of lots; but the visible marking out upon the ground of the extension of Beach Street from a point about midway between Pacific and Marsh streets by fences, especially when the ground between these fences was then and for many years had been used and traveled by a large number of persons, would seem to be more conclusive evidence of intention to dedicate the same to public use than the mere platting of unused ground.

Indeed, in the latter case, until an acceptance by the town authorities or by the public, or until by the sale of lots in accordance with the plat by which the owner has vested an interest in the street in others, it is a mere offer to dedicate the land for street purposes, which he may withdraw at his pleasure.

The obstruction maintained by Martinez, consisting of a corral, the bars of which were sometimes up and sometimes down, could not affect the dedication of the land in controversy to street purposes.   It was not upon Higuera's land, nor maintained by him, but was upon a public street of the city as expressly found by the court.   Even if the obstructions were permanent, and such as the public could not remove otherwise than by condemnation, it is expressly held that a *cul-de-sac* may be dedi-

cated to public use. (*Stone* v. *Brooks*, 35 Cal. 497, 498, and cases there cited.)

As to the fact that this strip of land had been assessed to Higuera and his successors in interest, and the taxes paid by them continuously, except two years when it was not assessed, we are of opinion does not affect the dedication. The findings do not show that this was assessed as a separate lot by a designation which would identify it, nor that the larger tract owned by Higuera, as shown by the second finding, had ever been subdivided into lots and blocks; and if the entire tract was assessed as a whole, as we may fairly infer from the findings, the failure to except this part covered by a traveled way was entirely proper, as much so as not to except a highway in the assessment of a farm. Besides, we think the general public are not estopped by the act or omission of the city assessor in this regard, nor that the payment of the tax by Higuera, under the circumstances disclosed by the findings, could be held to rebut his intention, as shown by specific acts to dedicate the land for street purposes.

In 1875, eight years before Higuera built these fences, he represented to one Pellerie, to whom he sold a lot fronting on Marsh Street, that " it was a corner lot; that that was Beach Street on the east side of the lot referred to "; thus recognizing it as an existing street at that time. In 1884 he said to one Pinho that he had intended the land in controversy for a street, but as the town authorities had not worked it or done anything about it, he considered he had a right to sell it, and intended to sell it. This statement confirms our conclusion as to the intention with which all his previous acts had been performed, and only shows his legal conclusion that he had a right to sell the land because the town authorities had not improved the street. In this conclusion we think he was wrong.

If it were necessary that the municipal authorities should accept the dedication by some formal act, or by improving the street in order to consummate or perfect

the dedication, or to render it irrevocable, then Higuera's conclusion that he had a right to sell the land was correct, and the judgment should be affirmed. Upon the question whether the acceptance must be by the municipal authorities, or whether the use of the street by the general public, under and in accordance with the dedication, is sufficient, the authorities are by no means uniform. In some states legislative enactments require a formal acceptance. In others, in the absence of any statutory requirements, the improvement of the road or street by the authorities specially charged with their care is required by the courts to establish the fact of acceptance, in the absence of more formal action. The ground upon which these statutes and decisions rests is, that the municipality ought not to be charged with the burden of improving streets which the authorities may deem unnecessary. But that does not seem to have been the policy of this state, legislative or judicial.

Prior to 1883, section 2619 of the Political Code provided that " all roads used as such for a period of more than five years are highways."

The chapter containing the above provision was repealed, and sections 2618 to 2756 of the Political Code were enacted February 28, 1883; and section 2618, as it now exists, recognizes as highways not only those laid out by the public, but those also which have been dedicated or abandoned to the public, or made such in actions for the partition of real property. It will be noticed, too, that this section expressly includes streets, alleys, lanes, courts, places, etc., in the term "highways." "A highway is nothing but an easement, comprehending merely the right of all the individuals in the community to pass and repass, with the incidental right in the public to do all the acts necessary to keep it in repair." (*Peck* v. *Smith*, 1 Conn. 103, 132; 6 Am. Dec. 216.) It might with some force be contended that the use of the ground in controversy for the period of more than five years prior to the repeal of section 2619 of the Political Code,

in the manner stated in the findings, made it a statutory highway.   (See *Bolger* v. *Foss*, 65 Cal. 250.)

Independently of the statute, however, we think the use of the street by the public for a reasonable length of time, where the intention of the owner to dedicate is clearly shown, is sufficient, without any specific action by the municipal authorities, either by resolution or by repairs or improvements.   A common-law dedication operates against the dedicator by estoppel, and this estoppel may be invoked by or on behalf of the public at large as well as by the municipal authorities of the city; for a street is a highway for the use and benefit of the public at large, though under the immediate care of the municipality.

In *New Orleans* v. *United States*, 10 Pet. 662, it was held that in order to dedicate property for public use in cities and towns and other places, it is not essential that the right to use the same shall be vested in a corporate body.   It may exist in the public, and have no other limitation than the wants of the community at large.

This case was cited and approved by this court upon this point in *School District* v. *Heath*, 56 Cal. 480, where *Bryant* v. *McCandless*, 7 Ohio, 476, was also cited to the point " that dedications of land for public or charitable uses are good without a donee to take title."

These cases were not those involving the acceptance of streets or highways, but the principle involved is the same.   Indeed, it is difficult to conceive how the general public could, without legislative, intervention, accept a dedication to their use otherwise than by user for the purpose for which the dedication was made.

In *Harding* v. *Jasper*, 14 Cal. 647, it was said: "If the soil be accepted and used by the public in the manner intended by the owner, the dedication is complete"; and this quotation is cited in *San Francisco* v. *Calderwood*, 31 Cal. 589, 91 Am. Dec. 542, in such connection as to show that the acceptance by the public was that shown by mere user.

In *San Francisco* v. *Canavan*, 42 Cal. 553, this court

said: "To constitute a valid and complete dedication, two things must occur, to wit, an intention by the owner clearly indicated by his words or acts to dedicate the land to public use, and an acceptance by the public of the dedication. This acceptance is generally established by the use by the public of the land for the purpose to which it had been dedicated." In *Stone* v. *Brooks*, 35 Cal. 497, it was said: "There does not seem to be any necessity for a formal acceptance by some particular board of officers. Such a requirement would destroy the common-law doctrine of dedication." In several cases where the distinction between a formal acceptance and an acceptance by user was not important to be observed, general language is used, which might seem to imply that a formal acceptance was necessary, but we do not recall any case where the doctrine that user alone by the public is sufficient acceptance is denied.

We therefore advise that the judgment of the superior court be reversed.

BELCHER, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion, the judgment is reversed.

HARRISON, J., PATERSON, J., GAROUTTE, J.