[L. A. No. 4886.    Department One.—May 29, 1919.]

THE CITY OF VENICE (a Municipal Corporation), Respondent, v. SHORT LINE BEACH LAND COMPANY (a Corporation), Appellant.

[1] PUBLIC HIGHWAY—DEDICATION AND ACCEPTANCE.—The law relating to highways is indicated by section 2618 of the Political Code and all that is required is a dedication or abandonment by the owner and an acceptance thereof by the public, and to accomplish such dedication or abandonment and acceptance by the public, neither improvement of the way by public authority, nor payment of taxes by the public, is necessary.

[2] ID.—INTENT TO DEDICATE — EVIDENCE.—In order to constitute a dedication of land for a highway or abandonment to the public for such purpose, the owner's intention to that effect must appear, but such intent need not be manifested by any contract, writing, or express declaration of the owner, and may be implied from his conduct.

[3] ID.—DEDICATION — QUESTION OF FACT.—The question whether a dedication of land for highway purposes has occurred in any instance is a conclusion of fact to be drawn from the circumstances of the particular case, and such circumstances must clearly show an unequivocal intention, manifested by appropriate words or conduct, or both, on the part of the owner to devote his land to public use.

[4] ID.—ACCEPTANCE OF HIGHWAY—EVIDENCE—USER.—It is not necessary that the acceptance of a highway by the public be manifested by any direct action, ordinance, or declaration of the public authorities, but it may be shown by mere user.

[5] ID.—PAYMENT OF TAXES — INSUFFICIENT REBUTTAL OF PROOF OF DEDICATION.—Payment of taxes by the owner is not sufficient to rebut the proof of dedication, if such proof is otherwise sufficient.

[6] ID.—DEDICATION OF STRIP OF LAND TO PUBLIC USE—SUFFICIENCY OF EVIDENCE.—In this action involving the character of a strip of land,

it is held the evidence sufficiently shows the intention of the owners that the strip should be used by the public as a public street or alley for the convenience and benefit of the public and of the owners of the lots abutting thereon, and that the general use by the public was a manifestation of its acceptance thereof.

[7] ID.—DEDICATION BY AGENTS OF CORPORATION—ESTOPPEL.—A corporation is estopped to deny the authority of its agents to dedicate a strip of land to public use, where the entire subject of making sales of lots owned by it was left to the control of such agents.

[8] CORPORATIONS — AUTHORITY OF AGENT — EVIDENCE.—The authority of an agent to act for a corporation may be shown by evidence that the person does business for the corporation and on its behalf, as agent, with the knowledge and acquiescence of its directors or general manager, or by their direction, as well as by the minutes of its board of directors or by a contract in writing.

APPEAL from a judgment of the Superior Court of Los Angeles County. H. T. Dewhirst, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

William H. Fuller for Appellant.

Rush M. Blodget, City Attorney, for Respondent.

SHAW, J.—The Short Line Beach Land Company appeals from a judgment in favor of the city of Venice declaring that a certain strip of land claimed by said company is a public street or highway in the city of Venice.

The proceedings in the court below were initiated by a complaint filed by the city of Venice against said Land Company to condemn said land and other parcels for a public street. This complaint was filed on September 27, 1912. An answer was filed thereto and the cause was continued from time to time until May, 1914, when the court, pursuant to a stipulation of the parties, made an order granting the Land Company leave to file a cross-complaint concerning the particular parcel now in question, on condition that the issues raised by the cross-complaint should be determined and disposed of before the issues raised upon the complaint in condemnation were determined. The cross-complaint was filed accordingly and the city of Venice made answer thereto. The issues upon this cross-complaint came on for trial in 1915. In the meantime the city of Venice had dismissed its action for con-

demnation. The only questions for decision here are those arising upon the cross-complaint. The parcel of land is described as lot 38 of block 10 of the Short Line Beach subdivision No. 1, as recorded in map book 2, page 59, in the recorder's office of Los Angeles County.

The cross-complaint is in the form of an ordinary suit to quiet title. The answer thereto alleges that said parcel of land is a public street or alley in the city of Venice. The court found that it was such public street and the only question presented for consideration is whether or not the evidence is sufficient to support this finding.

The contention of the respondent is that the owners of the tract in question dedicated it to public use as a street or alley and that such dedication was accepted by the public. It is not claimed that there was any express dedication, or that the owners ever executed any contract, deed, or map showing their intention to make such dedication. In March, 1914, some two months before the filing of the cross-complaint, the city of Venice passed an ordinance reciting that said strip of land had been offered for use as a street, and formally accepting it as such street. The respondent does not rely wholly on this acceptance, but contends that there was also an acceptance by the common use of the land by the public as a street and by other acts showing acceptance of the property as a street.

[1] There is no merit in the appellant's contention that section 325 of the Code of Civil Procedure, prescribing the conditions necessary to an adverse possession of the land, is applicable to this question. Land used for a highway could not be inclosed or cultivated, and no improvement thereof by the public authorities is necessary to constitute it a highway. The law relating to highways is indicated by section 2618 of the Political Code, declaring that such highways are roads, streets, alleys, etc., "laid out or erected as such by the public, or if laid out or erected by others, *dedicated* or *abandoned* to the public." To accomplish such dedication or abandonment and acceptance by the public, neither improvement of the way by public authority, nor payment of taxes by the public, is necessary. All that is required is a dedication or abandonment by the owner and an acceptance thereof by the public.

CLXXX Cal.—29

[2] In order to constitute such dedication, or such abandonment, by the owner, his intention to that effect must appear. Such intent need not be manifested by any contract, writing, or express declaration of the owner. It may be implied from his conduct. "If the donor's acts are such as to indicate an intention to appropriate the land to the public use, then, upon acceptance by the public, the dedication becomes complete." (*People* v. *Marin County*, 103 Cal. 228, [26 L. R. A. 659, 37 Pac. 203].) In that case it is said that in the case of an express dedication by words or acts, "the intention to appropriate the land to public use is manifested by some outward act of the owner manifesting his purpose," but that an implied dedication may be proved "by acts or conduct not directly manifesting the intention, but from which the law will imply the intent." [3] As stated in *Helm* v. *McClure*, 107 Cal. 204, [40 Pac. 437], the question "whether a dedication of land for highway purposes has occurred in any instance is a conclusion of fact to be drawn from the circumstances of the particular case; that such circumstances must clearly show an unequivocal intention, manifested by appropriate words or conduct, or both, on the part of the owner, to devote his land to the wayfaring uses of that somewhat vague entity called 'the public.'" (*Sussman* v. *San Luis Obispo County*, 126 Cal. 539, [59 Pac. 24]; *Smith* v. *San Luis Obispo*, 95 Cal. 466, [30 Pac. 591]; *Harding* v. *Jasper*, 14 Cal. 647.) [4] It is not necessary that the acceptance by the public be manifested by any direct action, ordinance or declaration of the public authorities. "Such acceptance may be shown by mere user without any formal action in relation thereto by the municipal authorities." (*Monterey* v. *Malarin*, 99 Cal. 293, [33 Pac. 840].) "The use of the street by the public for a reasonable length of time," is sufficient evidence of acceptance. (*Smith* v. *San Luis Obispo*, 95 Cal. 470, [30 Pac. 591].) [5] This case further holds that the payment of taxes on the property by the owner is not sufficient to rebut the proof of dedication, if such proof is otherwise sufficient. Upon applying these principles to the case, we find that there is sufficient evidence to sustain the findings of the court.

Block 10 is a parcel of land between Canal Street, lying easterly, Pacific Avenue, otherwise called Trolley-way, westerly, Center Street, southerly and Mildred Avenue, north-

erly, in the subdivision mentioned in the description afore-
said. Its width from Pacific Avenue to Canal Street is
235 feet. The frontage on Canal Street is about five hundred
feet, that on Pacific Avenue about 644 feet. The difference
between these sides is caused by the fact that Mildred
Avenue is not at right angles to the side lines of the block.
It contains thirty-eight lots. Seventeen of them are on the
Canal Street side. Twenty of them front on Pacific Avenue.
All of these are one hundred feet in length, thus leaving a
strip thirty-five feet wide in the center of the block, extend-
ing from Mildred Avenue to Center Street and lying between
the respective tiers of lots. This strip is designated on the
map as lot 38. The land was subdivided for sale by a syndi-
cate composed of some six or more persons and the subdivi-
sion and sale thereof was committed by the owners entirely
to one member of the syndicate, a real estate firm known as
Strong & Dickinson, and their subagents. Prior to the
filing of the map, a tentative map had been made showing
what is now called lot 38, not as a lot, but as an alley or
street. At that time it was expected that a street-car line
would be built through the tract upon this strip of land and
it was intended to be used for that purpose. By some change
of plan it was determined that the street-car line would not
be so located. Before it was filed, this strip was designated
on the map as lot 38, and a similar strip through block 9,
lying southerly of block 10, was designated as lot 42. The
evidence showed that nearly all of the lots were thereafter
sold by the owners through Strong & Dickinson and sub-
agents authorized by them, and that in making sales of lots
they stated, or authorized the statement, to several of the
purchasers that this strip would be left open for a public
street. The street-car line which was built on Pacific Avenue,
or Trolley-way, was so constructed that there was no ade-
quate room for the passage of teams along that street. Pur-
chasers made objections to this frontage and were told that
they would have access to the lots over the strip of land
in question. Houses were built upon the lots on each side of
this strip, the lots fronting on Pacific Avenue being almost en-
tirely built upon. Several of the owners made sidewalks in
front of their lots upon the alleyway, so called, designated on
the plat as lot 38. Some of these sidewalks were made as early
as the year 1906. From about the year 1905 until the time

of the trial this strip was continuously used as a public way, and was commonly known as "Strong's Drive." It was the only means of access to the buildings situated on the westerly side of the strip that could be conveniently used by delivery wagons and other vehicles. There is evidence that the owners of the property, through their local agents in charge of the property, were fully aware of this use of the strip of land. The city of Venice improved Center Street and Mildred Avenue with sidewalks, and at the corners of this alley upon those streets insets in the sidewalk were made which plainly indicated that it was supposed to be a public way. At the time the map was filed the title to the property was held by the Union Trust & Realty Company, in trust for the members of said syndicate. Shortly afterward the members formed the appellant corporation and the title was thereafter transferred to the corporation, but the agency for the making and control of the sales continued as before.

[6] This evidence sufficiently shows the intention of the owners that this strip of land should be used by the public as a public street or alley for the convenience and benefit of the public and of the owners of lots abutting thereon. The general use by the public was a manifestation of its acceptance thereof, and upon the rules laid down in the foregoing authorities the street was in this manner completely "dedicated and abandoned" to the public use.

It is true that the managers and agents of the syndicate above referred to, and some members of the syndicate, as well, testified that they made no such declarations concerning the use of the street and that they never intended to dedicate the property for that purpose. But the testimony of other persons concerning declarations made by them was sufficient to create a conflict of the evidence, which was determined by the court below in favor of the respondent.

[7] It is also suggested by the appellant that there is evidence that the directors of the appellant corporation never in any manner authorized its agents to dedicate this land to the public use. It is apparent, however, that the corporation is estopped to deny the authority of its agents in the matter. The entire subject of making the sales was left to the control of its agents, and they had at least ostensible authority to make the declarations referred to. (*Southern Pacific Co.* v. *Pomona,* 144 Cal. 347, [77 Pac. 929].)

Appellant complains of the ruling of the court allowing testimony of the declarations made by Carroll Daly, with regard to the use of this strip of land as a public street, claiming that he had no authority to make such statements. It appears that he was a member of the syndicate that subdivided the land and that he has been a director of the appellant corporation ever since its organization, that he was also secretary and treasurer of the corporation, that he took an active part in its business and was a subagent under Strong & Dickinson for the sale of the lots, and that as such he negotiated several sales of the lots by the company. Having obtained the benefit of his solicitations and representations to induce purchases, the company denies his authority to make them. [8] It is not the law that the authority of an agent to act for a corporation can only be proven by the minutes of its board of directors or by a contract in writing. It may be shown by evidence that the person does business for the corporation and on its behalf, as agent, with the knowledge and acquiescence of its directors or general manager, or by their direction. The company, in such a case, is bound by his acts and declarations within the scope of the business intrusted to him. (*Crowley* v. *Genesee M. Co.,* 55 Cal. 276.) It may be that Daly's declarations to W. A. Rennie in negotiating a sale by Daly of his own lot to Rennie was not admissible against the company. But they were given before it was disclosed that the lot belonged to Daly at a time when it appeared that it was one of the lots of the company. It was then apparently admissible and no motion was made to strike out the evidence when the contrary was shown. Hence the objection must be deemed to have been waived.

The judgment is affirmed.

Olney, J., and Lawlor, J., concurred.