[Civ. No. 3646.  First Appellate District, Division One.—February 25, 1921.]

## J. W. MULCH, Respondent, v. CAROLINE NAGLE et al., Appellants.

[1] PUBLIC HIGHWAY — IMPLIED DEDICATION — SUFFICIENCY OF EVIDENCE.—In this action to establish the existence of a public highway, the finding as to the use and repair by the public with the knowledge and consent and without any objection or hindrance by the owners is supported by the evidence.

[2] ID. — PUBLIC USER OF HIGHWAY — KNOWLEDGE OF AGENTS OF OWNER—EFFECT OF.—Knowledge of the general adverse use by the public of a strip of land as a highway may be attributed to the owner through his employees or agents.

[3] ID.—DEDICATION—IMPLICATION FROM USER. — While in order to constitute the dedication or abandonment spoken of in section 2618 of the Political Code, enumerating the general kinds of highways, it is essential that it appear that the owner assented to such dedication or abandonment, such assent may be implied from the conduct of the owner as well as by express declaration, and use by the public under such circumstances as to afford ground for a presumption of knowledge of such user is an assent to dedication.

[4] ID.—WIDTH OF PUBLIC HIGHWAYS—CONSTRUCTION OF CODE.—While it is provided in section 2620 of the Political Code that all public highways shall be not less than forty feet wide and private roads not less than twenty feet wide, this restriction has application to such highways only as are laid out by formal act of the proper public authorities and after the initiation of the requisite preliminary proceedings, and has no application to such highways, roads, or lanes as have been created by dedication or abandonment.

APPEAL from a judgment of the Superior Court of Santa Clara County. W. A. Beasly, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. F. Wilcox, D. M. Burnett and A. A. Sanderson for Appellants.

Walter G. Fitzgerald and John P. Fitzgerald for Respondent.

BARDIN, P. J., pro tem.—This is an appeal taken by the defendants from a judgment decreeing that a public highway extends along a certain twelve-foot strip of land located along the easterly boundary of two lots of land owned by the defendants, whose ownership of said lots was adjudged to be subservient to the rights of the public to use said strip of land as a public highway, and enjoining the defendants from erecting or maintaining any obstruction upon said strip of land in such manner as to interfere with the free use thereof as a highway by the public or by plaintiff as a part thereof.

In response to the issues raised by the pleadings the court found substantially to the effect that a public highway twelve feet wide extended along the easterly line of lots 130 and 131 of the San Martin ranch, in Santa Clara County

(which for convenience will be referred to as the Nagle property), from Church Avenue in a southerly direction 36.60½ chains to Las Llagas Creek; that the plaintiff is the owner of a small tract of land facing and bordering on said highway.

Findings numbered IV, V, and VI appear as follows:

"IV. That the said highway has constantly and continuously for a period extending over fifteen years, been used and traveled on foot, in vehicles and otherwise, and kept in repair by the plaintiff herein, his predecessors in interest in the land above described, and by the general public under claim of right, with the knowledge and consent of, and without any objection or hindrance by the owners of said lots 130 and 131 of the San Martin ranch during all of said time, except as hereinafter in these findings set forth.

"V. That ever since the year 1898, the said strip of land above described as a highway has been continuously, openly and under claim of right adverse to defendants been traveled on foot, in vehicles and otherwise by the plaintiff herein, his predecessors in interest and by such portion of the general public as had occasion to use the same. That during all of said time there was a well-defined and marked roadway thereon and that the same was kept in repair and repaired at various times by the general public; that during all of said time no permission was asked or granted for the use of said strip of land as a highway, or was any objection made by the owners of said lots 130 and 131 or those in charge thereof to the use of said strip of land as said highway, or any obstruction placed thereon, except as hereinafter stated.

"VI. That on or about the thirty-first day of January, 1916, the defendants unlawfully and without right so to do, obstructed the said mentioned highway so that it could not be traveled, by placing a gate across the same at a point where said road connects with said Church Avenue, without plaintiff's knowledge or consent and do now threaten and intend to maintain said gate and prevent plaintiff, his agents and employees, and the public from using said road, highway or right of way, and will continue so to do unless restrained by this honorable court."

Thence follow other findings of fact to the effect that the obstruction of said road is specially injurious to plaintiff; that if the defendants are not restrained from obstructing said highway the plaintiff's and the public's use thereof will be prevented and that the ownership of said lots 130 and 131 is subject to and subservient to the use of said strip as a public highway.

[1] The main burden of defendants' contentions on this appeal is that the findings do not find proper support in the evidence, and that particularly the portion of finding numbered IV relating to the use and repair of said highway "with the knowledge and consent of and without any objection or hindrance by the owners of said lots 130 and 131" is objectionable. In order to clearly understand the nature of this use and whether or not the court was justified in finding as it did it will be proper to make a detailed search of the record and to briefly state the facts and circumstances surrounding the alleged highway and its use from the time that it came into existence down to the interruption of travel thereon by the acts of the defendants.

The record shows that Santa Clara Land Company acquired title to the lots upon which said disputed road is located on December 14, 1900, and on April 22, 1902, conveyed the property to D. Guillermo Stein, who in turn conveyed it to Anna B. Glover on November 21, 1911. Glover conveyed to one Olds in July, 1913, and the Olds' ownership passed to one O'Donnell in April of 1915, who in turn conveyed to Caroline Nagle, one of the defendants herein, on July 29, 1915.

Ellis W. Harrison, a witness called on behalf of the plaintiff, testified substantially to the effect that in 1898 he bought the property now owned by the defendant Caroline Nagle on a contract, but that he never became the owner thereof; that while he was in possession of the Nagle tract he entered into an arrangement with two neighbors who owned property south of Las Llagas Creek to extend a road from Church Avenue, which marks the northerly end of the disputed strip of land, to Lena Avenue; that he continued in the possession of the Nagle property for about two years; that the strip of land in controversy here was opened as a road in 1898 and the public were

allowed to go through; that no objection was ever raised
to his knowledge to the opening of the road, and that it
was maintained as a public road as soon as it was opened,
and traveled continuously; that it was maintained and
kept up and repaired by the people living in that neighbor-
hood; that neighbors living to the south of the property
desired a way to reach Church Avenue lying north of the
Nagle property, and that he wanted a convenient exit from
his property to the south, and that the road thus opened
would also be convenient for the accommodation of one
Whitney, who then owned and occupied the property now
belonging to the plaintiff.

Benjamin Fuller testified that he was familiar with the
disputed highway from 1900 to 1907, and that from 1902
to 1907 he was roadmaster of the particular district within
which the disputed highway was situate, and had never
heard anyone question the right of the public or anyone
to travel the road in question; that it was well defined and
a hard well-traveled road, kept in repair by neighbors,
and that he had personally gone over the road and re-
paired it; that where it crossed Las Llagas Creek it was
accustomed to be washed out every year during winter, and
as roadmaster of the district he fixed the crossing and kept
it in repair; that Mr. Whitney (predecessor in interest of
plaintiff) used the road every day. He testified further
that when the Nagle place was set out to vines in 1904 or
1905, the roadway was not interfered with in any way, at
which time the Nagle property was in charge of a Mr. Cook
and a Mr. Caselano; that no objection was ever made by any
person in charge of the place to the maintenance of the
road; that he had been with the superintendent of the
property during Stein's ownership at the time certain re-
pairs were made on the road, but no objection was made
because of such repair work. During all the time the wit-
ness was there, with the exception of when the washouts
occurred, there was an attempt made to keep a road abso-
lutely open and clear at that place, being maintained as
such and traveled by the general public. The highway was
generally known in the neighborhood as Murphy Avenue.

Enos Bechis testified that he acted as superintendent of
the Nagle property and at a time when the title to said
property was vested in Stein, for a period of five or six

years, beginning in 1906 or 1907; that he did not know of any objection having been made by the company he directly acted for, or the people they represented (referring presumably to Stein) relative to maintaining the driveway; that in his capacity as superintendent he raised no objection to the maintenance of the roadway and permission to use the same was never requested of him by anyone.

Charles Curtis testified that he had been familiar with the roadway in dispute since 1897 and that the only time that he had known it to be closed was when the obstruction complained of by plaintiff was placed on the road by the defendants; that from the time he had first known the road it had been traveled as such, open to all who had occasion to use it; that he had hauled gravel on it to repair it while Mr. Fuller was roadmaster and that he knew of neighbors doing the same.

C. E. Wendell testified that he lived in the neighborhood of the strip of land in dispute and he knew that for sixteen or eighteen years it had been "used generally by the public with wagons hauling produce, delivery wagons, and everything of that character passing over it and anybody that wanted to go by. I never heard at any time of any objection made to its use as a road. So far as I ever heard it was generally considered in the neighborhood as an open road."

W. E. Sohlke testified that he lived in the vicinity of the roadway in dispute and that he had known it since the winter of 1913, since which time it had been kept open and maintained as a roadway over which he occasionally traveled and that there had never been any question of hindrance raised as to his traveling it.

M. E. Mulch testified that he was the son of the plaintiff and had been acquainted with the road in dispute for eleven years and that it had never been closed until the obstruction referred to in the complaint was placed thereon; that no one had ever questioned his right to travel this road nor did he ever ask anyone for permission so to do; that it was a first-class roadway and had never been plowed up; that the plaintiff used the road every day in the year to get mail, haul fruit and produce to town, and for other purposes; that a great deal of travel passes over the road; that the roadway in dispute connects with other neighborhood

avenues and that the plaintiff has no other roadway that is suitable for the ingress and egress of the plaintiff.

The plaintiff testified that he acquired the property occupied by him and fronting on the strip of land in question from one Whitney in 1905 and that at the time he moved on the property Whitney stated that the said strip of land was his road; that plaintiff had used the road thereafter without objection or hindrance until the Nagles had objected to his using it; that the successors in interest of Stein had seen plaintiff use the disputed road; that during the time the Nagle property was in the ownership of Stein it was in charge first of one Casalano and later of Bechis, who knew that plaintiff was using the road and who did not object to such use and that plaintiff had never asked anyone's permission to use the road.

The foregoing abstract of testimony discloses ample evidence upon which to rest the findings of the court. While it is true that the record does disclose some evidence tending in a weak manner to contradict the testimony thus set out, yet we are well satisfied with the conclusions reached by the trial court that there has been a valid dedication of the strip of land for highway purposes, and that the interference with the plaintiff's use of said road was unwarranted.

It is very earnestly contended by the appellants that the record fails to disclose any evidence which warranted the court in finding that the adverse use of the strip of land in question had been with the knowledge and consent of the owners of the fee thereof. This objection is predicated upon the claim that it was not shown that during the ownership of the Nagle property by Stein he had any knowledge of the adverse use thereof, either by plaintiff or the public. It appears from the record that during the period of time that Stein was the owner of the property referred to he was absent from the state of California and domiciled in Guatemala. It was not affirmatively shown that he had seen the property before he became the owner of it, nor was it shown that any hostile use of the strip of land had ever been actually brought to his knowledge.

[2] There are two answers to the appellants' contention in the behalf last stated. The record shows that there were occupants upon the Nagle property during the Stein

ownership who exercised such a continuous dominion and
control over the property as to very strongly show that they
were not trespassers, but, on the contrary, were accredited
representatives of Stein, and either his employees or the em-
ployees of his agents. The general adverse use by the public
of the highway was under the direct view of these persons.
If it be granted that Stein did not know the small tract of
land at the time he purchased it, and that a use of a
portion thereof in such a manner as to materially affect
its value and his own enjoyment of the property was un-
known to him during his ownership, we are satisfied that
knowledge of the public use of the strip of land must be
attributed to him through his employees or agents. (*Gurn-
sey* v. *Antelope Creek etc. W. Co.*, 6 Cal. App. 387, [92
Pac. 326] ; *City of Venice* v. *Short Line Beach Land Co.*,
180 Cal. 447, [181 Pac. 658].)

[3] But the court was justified in reaching the conclu-
sion it did for another and equally potent reason. The
plaintiff founds his action upon the theory that the strip
of land in question was dedicated to the public use as a
highway by the owners thereof. Highways are enumerated
by section 2618 of the Political Code as of these general
kinds: those laid out or erected by the public, or if laid
out or erected by others, dedicated or abandoned to the
public, or created in actions for the partition of real
property. In order to constitute the dedication or aban-
donment spoken of in the statute it is essential that it
appear that the owner assented to such dedication or aban-
donment, and that the public has accepted it. Acceptance
shown by public user satisfies the statute. (*Smith* v. *San
Luis Obispo*, 95 Cal. 463, [30 Pac. 591] ; *City of Monterey*
v. *Malarin*, 99 Cal. 290, [33 Pac. 840] ; *City of Venice* v.
*Short Line Beach Land Co.*, 180 Cal. 447, [181 Pac. 658].)
It is not required that the intention to dedicate be shown
by any express declaration of the owner; such intention
may be shown to have been declared either orally or in
writing, or it may be implied from the conduct of the
owner. As stated in *Wheeler* v. *City of Oakland*, 35 Cal.
App. 671, [170 Pac. 864] : "The authorities establish the
principle that an offer of the owner of land to dedicate it
for public use may be established in every conceivable way
in which such intention can be manifested." Assent to a
dedication may be implied from the acquiescence in the use

of owners' land by the public as a highway. (*Harding* v. *Jasper,* 14 Cal. 642.) Whether a particular strip of land has been dedicated or abandoned to the public for highway purposes depends upon the circumstances of each case. The question of the intention to dedicate private property to the public use must of necessity appear. But this intention, as already indicated, may be manifested as well by conduct as by an express declaration of such an intention. Where it is claimed that a public highway has come into existence, not by virtue of any affirmative act on the part of the owner of the traversed property, but by acquiescence in the use of such property as a highway by the public, knowledge of such use is an important and necessary element without the presence of which the dedication could not be perfected. The owner's knowledge of the use of his property is essential, for he could not well assent or acquiesce in a use concerning which he was ignorant. But it is not required that such knowledge be shown to have actually existed in the sense that it is required to be directly shown. The facts may be such as to afford sufficient ground for the law to raise the presumption that he had information of the use to which his land was devoted. (*State* v. *Kansas City, St. J. & C. B. R. Co.,* 45 Iowa, 139.) In *Schwerdtle* v. *County of Placer,* 108 Cal. 589, 593, [41 Pac. 448, 449], it is said: "But where the claim of the public rests upon long-continued adverse use, that use establishes against the owner the conclusive presumption of consent, and so of dedication. It affords the conclusive and indisputable presumption of knowledge and acquiescence, while at the same time it negatives the idea of a mere license."

We are in agreement with the suggestion of counsel for the appellants that the act of Harrison in first opening the traveled highway could not of itself, under any view of the case, amount to a dedication of the strip of land for public highway purposes, for the reason that he was not then or thereafter the owner of the property. (13 R. C. L. 23.)

Finding numbered VII was drawn in order to show that the obstruction complained of by plaintiff to the travel of the highway in question was such as to constitute it a public nuisance and thus to permit the plaintiff to maintain

his action under the provisions of section 3493 of the Civil Code. We find it to be sufficiently supported in its essential elements by the evidence.

It is our view that the findings, based, as we have found them to be, upon ample evidence, are entirely sufficient to establish a public highway by implied dedication. (*Schwerdtle* v. *County of Placer*, 108 Cal. 589, [41 Pac. 448]; *Hartley* v. *Vermillon*, 141 Cal. 339, [74 Pac. 987]; *People* v. *Myring*, 144 Cal. 351, [77 Pac. 975]; *Fleming* v. *Howard*, 150 Cal. 28, [87 Pac. 908]; *Leverone* v. *Weakley*, 155 Cal. 395, [101 Pac. 304]; *City of Venice* v. *Short Line Beach Land Co.*, 180 Cal. 447, [181 Pac. 658].)

[4] It is claimed that the law does not sanction or permit a public highway of but twelve feet in width, and that consequently the court was powerless, under any view of the case, to adjudge that the strip of land was subject to the use of the public as a highway. As has already been made clear, the particular highway in question came into existence by reason of the dedication thereof as such, and not by virtue of any steps taken pursuant to the statutes whereby a public highway may be created by the proper authorities. While it is provided in section 2620 of the Political Code that all public highways shall be not less than forty feet wide, and private roads not less than twenty feet wide, this restriction must be held to have application to such highways only as are laid out by formal act of the proper public authorities, and after the initiation of the requisite preliminary proceedings, and to have no application to such highways, roads, or lanes as have been created by dedication or abandonment. (13 R. C. L. 58.) The cases cited by the appellants as supporting a contrary view are of no weight here, since they relate solely to public highways sought to be created by formal steps required by statute for laying out a public way by the prescribed public authorities.

The judgment is affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 26, 1921.

All the Justices concurred.