[Civ. No. 14602. Second Dist., Div. Three. Apr. 24, 1945.]

DAVID L. BALL, Respondent, v. M. H. STEPHENS, Appellant.

C. P. Kaetzel and M. A. Fitzgerald for Appellant.

Nelson & Castro for Respondent.

SHINN, J.—The judgment in this case declared, "that for more than thirty years immediately preceding the commencement of the above-entitled action there has been and still is a public road and highway situated in the County of San Luis Obispo, State of California, described as follows, to wit: [description] . . . to the Deer Trail Quicksilver Mine, and being the present existing road traversing said sections and being 20 feet in width." Defendant was ordered to remove a fence with a locked gate which he had placed across the road where it enters his land and to pay plaintiff $500 damages as the reasonable rental value of plaintiff's interest in a quicksilver mine owned by plaintiff and defendant during the time he was prevented by defendant from using the road and working the mine. For some 900 feet the described road crosses a corner of a parcel of land which defendant homesteaded and which was patented to him in 1928. Defendant seeks a reversal of the judgment upon the following grounds: (1) the evidence was insufficient to prove the existence of a public road; (2) the issues of the present action were determined adversely to plaintiff and in favor of defendant in a former action tried shortly before the present one was commenced; (3) there was insufficient evidence to sustain the finding of damages.

For proof of the existence of the road, plaintiff relies upon section 2477, U. S. Revised Statutes, 43 U.S.C.A. 932, which was enacted in the year 1866 and reads as follows:

''The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted'' and upon evidence of public use of the described route as a roadway. Under this act highways could be established over public lands not reserved for public uses while they remained in the ownership of the government. Congress did not specify or limit the methods to be followed in the establishment of such highways. It was necessary therefore, in order that a road should become a public highway, that it be established in accordance with the laws of the state in which it was located. (*Sutton* v. *Nicolaisen* (1896), 5 Cal.Unrep. 348 [44 P. 805]; *Hartley* v. *Vermillion* (1903), 141 Cal. 339, 348 [74 P. 987]; *People* v. *Power* (1918), 38 Cal.App. 181 [175 P. 803].)

█ The laws relating to roads and highways that were in force prior to 1883 need not be examined. Section 2618 of the Political Code as reenacted in 1883, and which was in force until 1935, declared the law with respect to what constituted public highways and antedated the earliest travel over the route by vehicle. As reenacted it read as follows: ''In all counties of this state public highways are roads, streets, alleys, lanes, courts, places, trails, and bridges, laid out or erected as such by the public, or if laid out or erected by others, dedicated or abandoned to the public, or made such in actions for the partition of real property.'' The highway in question was not laid out by the public. It became a highway, if at all, by dedication. The act of 1866 was an offer of rights of way in general, and it operated as a grant of specific rights of way upon the selection of routes and the establishment of roads over public land. Acceptance of the offer of the government could be manifested and dedication could be effected by the selection of a route and its establishment as a highway by public authority. In the present case no action was taken by the Legislature or the board of supervisors to declare the route a highway and it was never improved or maintained by the county. Dedication could also be effected without action by the state or county, by the laying out of a road and its use by the public sufficient in law to constitute an acceptance by the public of an offer of dedication.

█ Evidence of user was properly received for the purpose of determining whether there had been sufficient use to prove acceptance of an offer of dedication. The law was stated in the early case of *Harding* v. *Jasper* (1860), 14 Cal. 642, 647-8,

as follows: "The vital principle of the dedication, is the intention to dedicate; and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made. Time, therefore, though often a very material ingredient in the evidence, is not an indispensable ingredient in the act of dedication. If accepted and used by the public in the manner intended, the dedication is complete —precluding the owner and all claiming in his right, from asserting any ownership inconsistent with such use. Dedication, therefore, is a conclusion of fact, to be drawn by the jury from the circumstances of each particular case; the whole question, as against the owner of the soil, being, whether there is sufficient evidence of an intention on his part to dedicate the land to the public use as a highway." In *Smith* v. *San Luis Obispo* (1892), 95 Cal. 463 [30 P. 591], the court quoted from *Harding* v. *Jasper*, saying that the case had been cited and approved by the court down to that time and accords with the best considered cases in many other states, and it was said (p. 470): "... we think the use of the street by the public for a reasonable length of time, where the intention of the owner to dedicate is clearly shown, is sufficient, without any specific action by the municipal authorities, either by resolution or by repairs or improvements." In *People* v. *Power, supra,* 38 Cal.App. 181, after reviewing section 2618 and other Political Code sections, the court said (p. 185): "Notwithstanding the statutory provisions above noted, it does not appear that a formal declaration by the board of supervisors has ever been held to be under all circumstances essential to the creation of a public highway." It was said in *Venice* v. *Short Line Beach Land Co.* (1919), 180 Cal. 447, 450 [181 P. 658]: "It is not necessary that the acceptance by the public be manifested by any direct action, ordinance or declaration of the public authorities. 'Such acceptance may be shown by mere user without any formal action in relation thereto by the municipal authorities.' (*Monterey* v. *Malarin,* 99 Cal. 293, [33 P. 840].)"

Since a valid dedication may be shown by proof of an intention to dedicate and of subsequent public use of the land in the manner intended by the owner, the question remains whether there was evidence to show sufficient public use. The period in which the offer of the government could be accepted by use of the route ended in 1928, when the patent

was issued. If a highway then existed defendant took title subject to the right of way. If it did not exist then, there is no public right of way; there was not sufficient evidence to show a later dedication, by defendant, either express or implied. The properties which the road crosses are located in a mountainous region, the land being useful mainly as a cattle range. The route was used first as a trail, later by horse-drawn vehicles, and went through a gradual process of occasional improvement and use until it became a road suitable for automobiles and trucks. This process was extended over a long period of years, but, as we shall point out, there was evidence that the road was well defined and had been made so by public use prior to 1928. Numerous witnesses testified for plaintiff as to the transition of the route from a trail to a road suitable for the use of automobiles and trucks. Maps made both before and after 1928 were placed in evidence, as well as aerial photographs taken in 1939, which showed the gradual extension of roads, including the one in question, farther back into the mountain country. These were useful principally to prove that the route now followed by the road is the one that was used by the public before defendant received his patent. The same may be said of the evidence as to the use of the road subsequent to 1928. If there was a public road across the land at the time the patent was issued, it is not important how extensively it was used, or whether it was used at all, by the public after that time so long as it was not legally abandoned.

The strongest evidence as to the extent of the travel was the fact that the road did come into existence through public use. In other words, it came to be a road by means of being used as a road and in the same fashion that many other mountain roads have come into existence. The earliest travel was by hunters, miners and vacationists. About 1905 numerous mining claims were located above the land defendant home-steaded and the locality attracted the attention of oil operators. A derrick was erected and work was done on a well which was located more than a mile from the land in question and considerably above it. Materials and supplies were hauled to the well by a route which followed another canyon, but the trail leading down from the vicinity of the well toward defendant's land was made into a road over which a two-horse wagon could pass. This part of the road was approximately a mile and a quarter long and it was used by employees of the oil

company in hauling wood up to the location of the well. Whether the road was then used as far down as defendant's present land was not made clear. However, the portion of defendant's land crossed by the road in question is somewhat flat and vehicles could be and were driven across it without the necessity of road construction. There was travel from the location of the well down across the land which defendant later acquired and out through the canyon below to the main highway. There was travel along the road by horse and wagon and other vehicles well beyond defendant's land as early as 1910 and it had become by that time a distinct road through use by the people working at the well and by others, who drove up the road in buckboards. About 1917 or 1918 another oil development was undertaken. Starting at about that time and continuing thereafter, automobiles were driven over the road and during the oil activity there was almost daily travel by motor vehicles and by wagon. For some five years before defendant's patent was issued miners traveled over the road by automobile to and from their mining claims. In answer to questions by the court, defendant testified that he lived upon other property in the vicinity and that when he homesteaded the land he knew that the road went through it and on up to the mine, although he stated his opinion that the upper part of the road, "the wood road," which had been used by the oil companies, had been abandoned. The travel over the road prior to 1928 was irregular but that was due to the nature of the country and to the fact that only a limited number of people had occasion to go that way. However, many people used the road for different purposes. The use of the route by hunters, vacationists, miners and oil operators which brought the road into existence was a public use. Travel was not merely occasional; it was in our opinion substantial and sufficient to prove acceptance of the offer of the government of the right of way and to constitute it a highway by dedication under the state laws. A good deal of the evidence related to the period subsequent to 1928. Defendant erected a fence at the lower end of his land in 1931 for the purpose of confining grazing cattle. There was a gate in the fence where it crossed the road. It appears that but slight use was made of the land for grazing purposes, and from 1931 to 1941 travel over the road continued, although at times defendant kept the gate locked. However, this practice seems to have been intermit-

tent and even when the gate was locked keys were furnished to people who had occasion to use the road. The evidence which related to this period had no direct bearing upon the question whether the road had been established while title to the land remained in the government. The implied finding was that the road was so established and it is supported by the evidence. ■ Defendant's title acquired by patent was subject to the right of way as it then existed. (*McRose* v. *Bottyer* (1889), 81 Cal. 122, 126 [22 P. 393]; *Town of Red Bluff* v. *Walbridge* (1911), 15 Cal.App. 770 [116 P. 77]; *Schwerdtle* v. *County of Placer* (1895), 108 Cal. 589 [41 P. 448].) No act of defendant could divest the right which the public had acquired. (*People* v. *Eel River & E. R. R. Co.* (1893), 98 Cal. 665 [33 P. 728]; *Koshland* v. *Cherry* (1910), 13 Cal.App. 440 [110 P. 143].)

■ Under his defense of res judicata, defendant pleaded a judgment rendered in September, 1942, in his favor in an action brought by plaintiff, alleging that it was upon the same causes of action alleged in the complaint herein. The finding was contrary to this allegation. The complaint in the former action alleged that plaintiff was the owner of a three-fourths part of the Deer Trail Quicksilver Mine and "that plaintiff is now and was at all times herein mentioned the owner of, as appurtenant to the aforesaid real property, a private right of way approximately 20 feet wide, being 10 feet on each side of the following center line, to wit: . . ." (Here follows a description of the road involved herein.) In the present action there was a cause of action which we have not heretofore mentioned, which alleged that plaintiff purchased an interest in the mine from one Arebalo; that defendant and said Arebalo represented to plaintiff that said Arebalo had a right of way appurtenant to the mining property to pass over defendant's land; that plaintiff purchased an interest in the mine and the right of way from Arebalo with defendant's knowledge and because of the representation, and that defendant was estopped to deny the validity of the right of way. There were no findings upon this cause of action, findings and judgment being rested solely upon the second cause of action, which alleged that for more than 30 years prior to the commencement of the action there had been a public road along the route in question. In the first complaint, as in the present one, it was alleged that defendant had erected a fence and gate across the road and had thereby excluded

plaintiff from the use thereof in traveling to and from the mine; it was sought to enjoin the maintenance of said fence and locked gate and to recover damages.

The cause of action upon which plaintiff prevailed herein upon a finding that the road is a public highway was not the same cause of action as the one in the former action, which alleged his ownership of a private right of way. The proof that would have established one cause of action would not have established the other. The causes of action were in fact inconsistent, since defendant could not have sold, and plaintiff could not have purchased, a private right of way over a public road. Moreover, a different title was involved in each case, the first a private title, the other a title vested in the public. Defendant insists that "the parties being the same and the relief being the same, the doctrine of res judicata applies." He states in his opening brief that the cause of action in the present suit was different from the one stated in the former action but still maintains that the judgment operates as an estoppel because damages and an injunction were sought in each case. His argument, however, fails to recognize the significance of the fact that the causes of action in the two actions were different, although the same injunctive relief was sought in each case. The remedy that was sought was not the cause of action. The cause of action in each case consisted of the right or title alleged and defendant's violation of it. (*McKee v. Dodd* (1908), 152 Cal. 637 [93 P. 854, 125 Am.St.Rep. 82, 14 A.L.R. N. S. 780.) The relief sought by way of injunction and damages was merely incidental. (*Corporation of America v. Bank of America* (1935), 7 Cal.App.2d 470 [46 P.2d 262]; *Fritz v. Superior Court* (1936), 18 Cal.App.2d 232 [63 P.2d 872].)

■ A judgment operates as a bar to a second action where the causes of action are the same, and in such a case it will be deemed that all matters were adjudicated in the first action that might have been adjudicated, namely, all grounds which would support plaintiff's right or title and all defenses which would defeat it, including those which were not placed in issue or tried. ■ Where the later action is upon a different cause of action, that only is deemed to have been adjudicated which was actually tried and determined or which was necessarily involved in the adjudication made. (*Todhunter v. Smith* (1934), 219 Cal. 690 [28 P.2d 916].) ■ The question of

the public character of the road was not in issue in the first case and the issue was not tried. A decision either way as to the private right claimed would not have determined any question as to the public right. The plea of res judicata was properly denied.

Defendant's final contention is that no damages should have been awarded. The evidence which plaintiff relies upon to support the award of damages was that access to the mine could be had only by the road in question, that operation of the mine was prevented by the closing of the road, and that his interest in the mine had a reasonable rental value of $50 per month. Plaintiff testified that the mine had been under lease upon two occasions since 1939 for combined periods of about 18 months and that his share of the cash rental was considerably more than $50 per month. Defendant's reply is that he had allowed the lessees to pass over the road and that it was not shown that he had refused the right to anyone else who wished to lease it. However, plaintiff testified that defendant had threatened to shoot him if he crossed the land and that he would some day exclude other persons whom plaintiff was taking to the mine, and it was not shown that defendant had ever withdrawn this threat or had offered to allow the road to be used if plaintiff should find a new lessee. The evidence did not disclose that plaintiff had an opportunity to lease the mine but under the circumstances he was excusable if he made no effort to do so. Defendant was not in a position to claim that the mine could not have been leased when his conduct had been such as to discourage any further leasing. The award of $500 damages for plaintiff's exclusion from the property for a period of 10 or 12 months was justified by the evidence.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.