**In the Matter of CALIFORNIA LUMBER
CORPORATION, Bankrupt.
No. 95717.**

United States District Court
S. D. California,
Central Division.

March 4, 1964.

See also 24 F.R.D. 190.

Herbert Gall, Los Angeles, Cal., for plaintiffs.

Shutan & Feinerman, and Brown & Brown, Beverly Hills, Cal., for trustee.

BYRNE, District Judge.

This case presents the interesting spectacle of a Trustee in Bankruptcy successfully applying the adage "three's a charm". By presenting much the same question to the Referee in three separate petitions, the Trustee finally obtained a ruling in his favor.

On February 6, 1959, California Lumber Corporation, debtor, petitioned for an arrangement under Chapter XI of the National Bankruptcy Act. Listed as personal property in its schedule of assets was a general designation of machinery, office furniture, etc. of a value of $9,-000.00 On March 27, 1959, the Referee issued an order indicating that the suggested composition had been rejected by the creditors, and that bankruptcy proceedings should ensue. Irving Sulmeyer was appointed Trustee of the estate.

On April 7, 1959, pursuant to a petition by the Trustee, the Referee issued an ex parte order declaring that the Trustee was authorized to employ Jack Rouse & Sons, Auctioneers, to sell, "the personal property and assets of the said bankrupt * * *".

Thereafter, and on or prior to April 21, 1959, Frances Kurtz Lundberg, W. C. Kurtz, Jr., and James Biggs Kurtz, who leased certain premises to the debtor, notified the Trustee and Auctioneers that some of the items of property upon those premises were fixtures, belonging to them as landowners. On April 21, 1959, the auction sale was held. The Auctioneers sold numerous pieces of machinery, which were upon the leased premises, to various corporations and individuals.

On or about July 31, 1963, Frances Kurtz Lundberg, W. C. Kurtz, Jr., and James Biggs Kurtz filed an action in the Superior Court of the State of California in and for the County of Los Angeles (No. 729863). The action was against the Auctioneers and certain purchasers at the auction sale, who will hereafter be referred to as buyers. The complaint alleged that the buyers and the Auctioneers had unlawfully removed certain items of property which were permanently attached to the land. It further alleged that the remaining real property was damaged by the removal of these fixtures. The complaint prayed for both actual and punitive damages.

On October 27, 1959, the Trustee filed a petition for a restraining order against Frances Kurtz Lundberg, W. C. Kurtz, Jr., James Biggs Kurtz and Herbert Gall, their attorney, (hereafter referred to as petitioners). The petition recited many of the facts already set out above, and then alleged that:

"said Superior Court complaint * * * relates solely to the transactions whereby your petitioner as trustee of this bankrupt estate, acting through the duly employed, licensed auctioneer, has sold and delivered to purchasers assets of the bankrupt estate. Said complaint sets forth a controversy which is essentially a controversy with your petitioner. Said complaint sets forth a controversy concerning which this Bankruptcy Court has the sole and exclusive jurisdiction."

The petition then stated that the complaint was an effort to take away the bankruptcy court's exclusive jurisdiction to determine controversies relating to

the method of liquidation of assets of the bankrupt estate. The Trustee asked that the petitioners be restrained from prosecuting their suit against the buyers and the Auctioneers in the Superior Court. After an order to show cause was served, issue was joined, and on July 1, 1960, the Referee made an order refusing to grant an injunction and declaring that:

"there was no order of court directing a sale of the property involved in said Superior Court Action * *, free and clear of liens or incumbrances and * * * said Superior Court Action * * * does not endeavor to procure any relief against the Trustee herein or the estate herein * * *".

No review of this order was sought, and it became final.

Not accepting this rebuff, the Trustee filed another petition on September 8, 1960. This one was designated as a petition to determine title to property and for a restraining order. This time the Trustee alleged that the petitioners' complaint involved items of property which were sold by him through the Auctioneers at the auction sale, and that the petitioners claimed he did not have title thereto. He also alleged that the Auctioneers had demanded that he assume their defense and that he had refused. He stated that the complaint against the buyers and the Auctioneers related solely to the sale of assets of the estate and that it, "sets forth a controversy which is essentially a controversy between plaintiffs and your petitioner." Furthermore, he stated, "said Superior Court complaint sets forth a controversy concerning which this Bankruptcy Court has the sole and exclusive jurisdiction." Once again the Trustee asked that the petitioners be restrained from prosecuting their suit against the buyers and the Auctioneers in the Superior Court. An order to show cause issued to the petitioners, the buyers, and the Auctioneers. Issue was joined, and on July 29, 1961, the Referee filed Findings of Fact and Conclusions of Law. He found that the Superior Court complaint claimed that the Auctioneers sold certain items of property that were fixtures attached to the petitioners' realty, and the petitioners' land was damaged by reason of removal of those fixtures; the Superior Court action was for removal of property claimed to be fixtures, and for removal of property not claimed to be part of the debtor's property, and for damages to the petitioners' land; the controversy is not with the Trustee, but, rather, with buyers and other persons who damaged petitioners; there is a controversy with the buyers and the Auctioneers for removal of property not involved in the bankruptcy sale and for damages to real property; the question of title need not be determined by the court of bankruptcy; and there is no need to enjoin the action against the buyers and the Auctioneer. On the same day an order, using the language of the order of July 1, 1960, was issued, and the Referee refused to grant the requested injunction. No review was taken and the order became final. These findings and the order disposed of the matter, and the petitioners proceeded to prepare for the trial of their action against the buyers and the Auctioneers in the Superior Court.

Then on April 25, 1963, one year and nine months later, the Trustee filed another application for a restraining order. This time he only asked that the petitioners' Superior Court action against the Auctioneers be enjoined. He alleged that the Auctioneers acted as his employees and agents and that the action against them in effect constituted an action against himself, as Trustee. He further stated that the Bankruptcy Court had not given permission to sue the Trustee or his agents [as allegedly required by 28 U.S.C. § 959(a)], and that the effect of the complaint was to encroach upon the exclusive jurisdiction of that court. Once again issue was joined, and the Referee filed Findings of Fact and Conclusions of Law on August 5, 1963. This time the Referee, after considering all of the files in the case, found: the Auctioneers acted as employees and

agents of the Trustee when the property was sold; the Superior Court action involves assets of the bankrupt estate, and it is against the agents and employees of the Trustee; the action relates to claims actually against the Trustee; and the bankruptcy court has exclusive jurisdiction of the matter. Upon those findings and conclusions an order issued, which perpetually restrained the petitioners from proceeding with their suit against the Auctioneers and from taking any other action against the Trustee or the Auctioneers other than in the bankruptcy court itself.

The petitioners claim that the previous orders were *res judicata*. The Trustee contends he has in no way asked that the findings on the earlier petitions be disturbed, and the Referee did not expressly state that he was disturbing them. Nevertheless, as the above-stated facts indicate, some of the earlier findings were very materially disturbed.

■■ The doctrine of *res judicata* has, essentially, two major facets. First, a decree on the merits of any cause of action will forever bar a new suit between the same parties on the same cause of action. Second, "any right, fact or matter in issue, and directly adjudicated on, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered on the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties * * * whether or not the claim or demand, purpose, or subject matter of the two suits is the same * * *." 50 C.J.S. Judgments § 592. See also, Carter v. Monterey County Trust and Savings Bank, 3 Cal.App.2d 648, 38 P.2d 583 (1935); and Gill v. Peppin, 41 Cal.App. 487, 182 P. 815 (1919).

■■ Thus, where the causes of action are the same the first judgment is a complete bar as to law and fact, and as to all matters which were or could have been presented to the court in the first action. See, Williams v. Krumsiek, 131 Cal.App.2d 411, 280 P.2d 486 (1955), and Ball v. Stephens, 68 Cal.App.2d 843,

158 P.2d 207 (1945). And, where the causes of action, are not precisely the same, the first judgment is *res judicata* as to all matters which were actually tried and determined therein. See, Bernhard v. Bank of America Nat. Trust & Savings Ass'n, 19 Cal.2d 807, 122 P.2d 892 (1942); English v. English, 9 Cal.2d 358, 70 P.2d 625, 128 A.L.R. 467 (1937); Todhunter v. Smith, 219 Cal. 690, 28 P.2d 916 (1934); and Ball v. Stephens, 68 Cal.App.2d 843, 158 P.2d 207 (1945).

■■ These general principles of *res judicata* apply in both the state and federal courts. It is also clear that they apply to orders of Referees in bankruptcy. Thus, as is stated in 2 Collier on Bankruptcy, 14th ed., § 39.29, pp. 1528–29:

> "If a review of the referee's order is not taken or obtained, that order has the force and effect of an order of the district court and is *res judicata* as to the merits. The parties' right to complain of the order is effectually lost, except for possible reconsideration by the referee himself, and the order is not subject to collateral attack in the district court."

See also, to the same effect, Remington on Bankruptcy, vol. 2, § 619, p. 78, and vol. 5, § 2312, p. 478 (1956).

This view of the commentators is amply supported by the cases. See e. g., Massie v. Erie R. Co., 196 F.2d 130 (3d Cir. 1952); In re Sterling, 125 F.2d 104 (9th Cir. 1942); Hamel v. United States, 135 F.Supp. 482 (D.N.H.1955); and In re N. H. Development Co., 62 F.Supp. 722 (N.D.Cal.1945).

■ Applying the principles of res judicata to this case, it seems rather apparent that such principles would preclude the Trustee from obtaining a favorable determination of the issues he raised in his petition of April 25, 1963. This is true regardless of which facet of the doctrine is found to be applicable. Although the Trustee has only asked to restrain the suit as to the Auctioneers this time, that, of course, does not make a difference. The essential issues, as well as the parties, have remained the

same. Thus, for example, in the first petition the Trustee alleged that the action against his employees, the Auctioneers, was against himself, and that the complaint related to matters solely within the jurisdiction of the bankruptcy court. These questions were decided against him. In the second petition the same allegations were made. Again, the court decided against him, and made specific findings to that effect. Then, in his third petition the Trustee made the very same allegations again, though in more detail and with slightly different emphasis. If the principle of *res judicata* has any application to a Referee's orders, surely it should apply here. That the issues presented were actually the same is apparent from the findings on the third petition. Although the Trustee disclaimed any intent to upset the earlier findings, the court was forced to make findings diametrically opposed to the old ones. This time the court had to find that the action was, in fact, against the Trustee and that it did involve the assets of the estate and matters within the exclusive jurisdiction of the court. Thus, if the doctrine of *res judicata* is taken by itself, it unerringly requires the conclusion that the Referee's latest order must be vacated. However, as the quotation from Collier on Bankruptcy, supra, indicates, the question of the Referee's power to reconsider his prior orders must be dealt with.

At one time many courts seemed to feel that a Referee had no power to reconsider his own orders once they were filed. This view was declared to be improper in the leading case of In re Pottasch Bros. Co., 79 F.2d 613 (2d Cir. 1935). In Pottasch the referee had issued an order which inadvertently did not express the true intent of the court or of the parties. No one had changed his position because of the order, and the court said that it should be amended. The sole question was whether the Referee had the power to amend it. In discussing this question for the court, Judge Learned Hand said, 79 F.2d page 616:

"If a referee is a court at all, there is no warrant for saying because an appeal lies from his orders, that he has not the ancient and elementary power to reconsider those orders, nor the faintest reason why he should not do so. That power is of course limited in duration when there are terms of court, but in bankruptcy there are none. * * * Why it is desirable that their orders, ruat coelum, should be as immutable as the Twelve Tables, once the ink is dry, we cannot understand."

And at page 617 of 79 F.2d:

"We hold that a referee has the same power over his orders as the District Judge has over his."

This same view was expressed in Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146 (1942), rehearing denied, 317 U.S. 714, 63 S.Ct. 523, 87 L.Ed. 568 (1943). There, about a month after the original order had been made by the commissioner in bankruptcy, and before any rights had vested in reliance upon it, certain parties petitioned for a rehearing. The Supreme Court declared that such a petition could be granted during the pendency of the bankruptcy proceedings. However, it had been found that there was "no equity or merit" in the petition and the Supreme Court said it was, therefore, proper to refuse to hear it.

The old Ninth Circuit view was that a referee's order could not be reopened by him. Grande v. Arizona Wax Paper Co., 90 F.2d 801 (9th Cir. 1937), and In re Faerstein, 58 F.2d 942 (9th Cir. 1932). However, in Smith v. Hill, 317 F.2d 539 (9th Cir. 1963) this view was overruled, and this circuit's view was brought into line with the prevailing law. It should be noted that in Smith the petition for rehearing was filed within thirty days after the order issued and the court was careful to point out the fact that no one "changed his position to his prejudice in reliance upon the order's finality. * * *" See also, Castaner v. Mora, 234 F.2d 710 (1st Cir. 1956) (where the first order contained palpable errors of law and fact it could be reopened, where no one had changed his position in reliance thereon); and Indemnity Ins. Co. of North

America v. Reisley, 153 F.2d 296 (2d Cir. 1945), cert. denied, 328 U.S. 857, 66 S.Ct. 1349, 90 L.Ed. 1629 (1946) (where no one had changed his position in reliance upon the order the referee could reopen it since the law to be applied had changed since its issuance).

The cases proceed on the theory that the Referee should have the same control over his orders as a District Court has over its orders. Rule 60(b), Federal Rules of Civil Procedure, sets out the power of a District Court judge over his final orders. That rule indicates that a party may be relieved from a final order, "upon such terms as are just * * *" for a number of reasons, all of which, it seems, require allegation of good equitable grounds. The Federal Rules of Civil Procedure are made applicable to bankruptcy proceedings by General Order in Bankruptcy XXXVII, insofar as they are not inconsistent with the Act. They are also made applicable by Local Rule, So. Dist. of Calif., No. 222. However, it has been said that Rule 60(b) is not directly applicable because no order in bankruptcy is "final" in the sense of that rule until the whole proceeding has terminated. Indemnity Ins. Co. of North America v. Reisley, 153 F.2d 296 (2d Cir. 1945), cert. denied, 328 U.S. 857, 66 S.Ct. 1349, 90 L.Ed. 1629 (1946). But even if the rule is not directly applicable the equitable policies it incorporates most certainly are. The Referee does not have an arbitrary and capricious power to reopen, but only a sound judicial discretion, which he is required to exercise. This has been recognized by the many cases discussed above. Each of them indicated that no one had changed his position in reliance upon the first order, and that the old order was either palpably incorrect, or did not really express the intent of the parties.

It is very difficult to analyze the present case in the light of these principles of reconsideration, for the application to the Referee was not framed in those terms. Because of that the Referee has not made any findings which would indicate that it would be just to reopen the earlier orders at this time—even if his new decision could be construed as doing just that. See, In re Jayrose Millinery Co., 93 F.2d 471 (2d Cir. 1937). On the contrary, the evidence and papers now before this court indicate that the Trustee has not shown that anything, which would require a different decision, has occurred since the first two orders issued. He has not shown that the Referee committed any palpable errors. Nor has he shown that the Referee's earlier decision did not reflect the intent of the parties and of the Referee. What does appear is the undisputed claim of the petitioners that they have expended large sums of money preparing for trial in the Superior Court, because of their reliance upon the earlier orders. Petitioners also claim: that the case was ready for trial (issue of a pretrial order by the clerk of the Superior Court was expected momentarily); and that it is now almost five years since the Superior Court action was filed and California Code of Civil Procedure § 583, which allows dismissal for delay in bringing a case to trial *might* come into play. Furthermore, the Trustee presented this new petition one year and nine months after the others were decided against him, without showing any good reason for the delay.

Since the order of July 1, 1960, and the order of July 26, 1961, decided all of the material facts and questions, which the Trustee now attempts to put in issue, adversely to him, those orders are *res judicata* and the application of April 25, 1963, cannot succeed. On the facts now before the court it would be improper to reopen the earlier orders, for the Trustee has not presented any meritorious reason for doing so, and it appears that an injustice would be worked upon the petitioners if it were done. This, of course, does not preclude the Trustee from asking the Referee to reopen his earlier orders upon the making of a proper showing.

The Referee's order is reversed and the case remanded for disposition not inconsistent with the views expressed herein.